ment, there were filed with the board of elections nominations of John J. Sammon by the committee properly appointed by the Republican organization to fill vacancies and by the committee properly appointed by the Civic Alliance to fill vacancies. The board of elections refused to place Sammon's name in both columns, resting their refusal upon section 136 of the election law (chapter 17, Consolidated Laws, being chapter 22 of the Laws of 1909). That section, so far as material to the questions under consideration, provides as follows:

"When no nomination shall have been originally made by a political party or by an independent body for an office, or when a vacancy shall exist, it shall not be lawful for any committee of such party or independent body authorized to make nominations or to fill vacancies, to nominate or substitute the name of a candidate of another party or independent body for such office; it being the intention of this chapter that when a candidate of one party is nominated and placed on the ticket of another party or independent body, such nomination must be made at the time and in the manner provided for making original nominations by such party or independent body."

We do not think that the situation shown to exist in this case is within the prohibition contained in the provisions of section 136, above quoted. What was the expressed intention of that provision was to prevent the committee designated to fill vacancies from nominating to fill such a vancancy a candidate already nominated and on the ticket in the column of another party or independent body, and thus presumably defeat the intention of the convention or nominators who named the committee to fill vacancies. · But where one person has been nominated by more than one convention, or by more than one independent body, and that candidate retires, the committee authorized to fill vacancies can respectively fill this vacancy on the ticket over which it has jurisdiction, although the same person is also selected by the committee of the other party or independent body.

We think, therefore, that the nomination of Sammon to fill the vacancy in both columns was valid, and that the board of elections should recognize it as a valid nomination for the office in both columns.

· The order appealed from is therefore reversed, and the motion granted.

---

(64 Misc. Rep. 232.)

In re MILLER et al.

(Surrogate's Court, Kings County. July, 1909.)

1. WILLS (§ 733*)—CONSTRUCTION—INTEREST GIVEN.
    A gift of testator's residuary estate to his wife for life, to receive to her own use all the rents, profits, and income therefrom, did not give to her the mercantile profits from a business in which testator was a partner, accruing between his death and the time when the partnership affairs were finally liquidated.
    [Ed. Note.—For other ⌐ases, see Wills, Cent. Dig. § 1836; Dec. Dig. § 733.*]

2. GIFTS (§§ 18, 62*)—DELIVERY.
    Delivery is necessary to effect a gift, either causa mortis or inter vivos.
    [Ed. Note.—For other cases, see Gifts. Cent. Dig. §§ 29, 123; Dec. Dig. § 18, 62.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. GIFTS (§ 30*)—DELIVERY—BANK ACCOUNT.

A letter from a husband to his wife, bespeaking either an intention that a savings bank account in his name should belong to his wife or an assurance that it already belonged to her, can in neither case be taken to evidence or effectuate the delivery necessary to a valid gift.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 52; Dec. Dig. § 30.*]

4. GIFTS (§ 30*)—DELIVERY—BANK ACCOUNT.

A statement by a bank depositor that an account in his name, represented by a book remaining in his possession, is the property of another, does not tend to show a previous delivery or assignment of the subject of the alleged gift.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 52; Dec. Dig. § 30.*]

5. EXECUTORS AND ADMINISTRATORS (§ 506*) — ACCOUNTING BY — BURDEN OF PROOF.

A statement by an executrix in her account that proceeds of a sale of bonds by her were embraced in the schedule of her general cash receipts must prevail, in the absence of contrary proof, and the burden is upon the person objecting to show that she has not accounted therefor.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2171; Dec. Dig. § 506.*]

6. WILLS (§ 733*)—CONSTRUCTION—TIME OF COMMENCEMENT OF INTEREST.

A provision in testator's will that, if the income from his personal property should be less than $5,000 in any year during his wife's life, he thereby authorized a sale of personalty to provide an annual income of $5,000, or so much thereof as might be necessary for personal and living expenses, was for the maintenance of his wife, and her life estate, therefore, began at his death, and her right to the income then attached.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1836; Dec. Dig. § 733.*]

7. EXECUTORS AND ADMINISTRATORS (§ 118*)—LOSS OF ASSETS—LIABILITY.

An executrix is not subject to surcharge for losses incurred as life tenant.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 472; Dec. Dig. § 118.*]

Judicial settlement of the account of Theodore F. Miller and another, as executors of the will of Mary F. Farnham, deceased, of her acts and proceedings as executrix of the will of Stephen H. Farnham, deceased. Account settled.

Dykman, Oeland & Kuhn, for accounting executors.
James C. Church, for administrator c. t. a. of Stephen H. Farnham.
Henry Wynans Jessup, for residuary legatee of Mary F. Farnham.
Studin & Sonnenberg (William Reeda, of counsel), for next of kin and residuary legatees of Stephen H. Farnham.

KETCHAM, S. This is an accounting by executors of a deceased executrix. The will of the original decedent, after providing for certain annuities, proceeds in part as follows:

"Third. All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath to my wife, Mary Frances Farnham, for and during her natural life, to possess, use and occupy the same, or any portion thereof, and to receive to her own use and benefit all of the rents, profits and income therefrom. The provisions of this will in favor of my said wife are to be accepted by her in lieu of all dower or claim of dower upon my estate."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The wife was appointed executrix, and as such she qualified and remained in office until her death. The husband (testator) at his death was in partnership with C. S. Bowers in certain ventures which were conducted through the firm of Ropes & Co. The capital of the decedent's firm, as well as any profit accrued at the time of his death, was in the hands of Ropes & Co.

First. It is claimed by a residuary legatee under the will of Mrs. Farnham that Mr. Farnham's will, in its provision that she should have the "rents, profits and income" of the residue, gave to her the mercantile profits from the business conducted through Ropes & Co., which accrued between his death and the time when the transactions were finally liquidated. This claim is stated by counsel as follows:

"Mr. Farnham's will gave his wife the profits on the Ropes business during the period of liquidation."

At the death of Mr. Farnham no right or interest in the firm assets passed to his representatives, nor was there any such right or interest which could be disposed of by his will. He had no such right touching the property of his partnership that he could bequeath its profits. He did not have them to give. Upon his death his firm was dissolved, the surviving partner became the legal owner of all the firm assets, necessarily including profits to accrue during the period of liquidation, and the estate of the deceased partner had nothing but the right to an account, and to such sum as might be found upon the account to be due from the survivor. This was merely an equitable chose in action against the surviving partner, and any sum which might be paid in solution thereof would pass without brand or earmark to distinguish profits from principal. It was in the hands of the estate nothing but principal.

The profits upon the residue which the will contemplated could only be such profits as might result after its receipt by the executrix and its delivery to herself as life tenant. The will speaks only of the profits of the residue, and the fund in question could not reach the residue until the liquidating partner paid his equitable indebtedness to the estate. True, there is a rule under which interest from the time of the death of the testator is sometimes held to be payable, where the beneficiary is the primary object of the testator's consideration or the provision is for maintenance, and this case was within the rule, even if the fund was not reduced to the possession of the executrix for some time; but the benign fiction that the estate as such has been yielding a profit, artificially fixed at the ordinary rate of interest, before it has actually become the subject of administration, is no warrant for passing over to the life tenant the commercial profit which accrued during liquidation of the decedent's partnership affairs. The sums received in settlement of the partnership accounts must be regarded as principal, either for the purpose of administration, or for the purpose of investment and enjoyment as life tenant.

Second. The claim is made that 40 United States bonds were given by Mr. Farnham to his wife during his lifetime. Testimony is given of Mr. Farnham's declaration that he had given $40,000 worth of bonds to his wife, and this declaration doubtless related to the bonds

in question. Against this is the unquestionable fact that the wife received and long treated the bonds as part of the assets of her husband's estate, though she later asserted her individual ownership and deposited and registered them as hers. If it were necessary to resolve this conflict of evidence, her conduct as to the securities would be held to overcome the testimony of testator's declaration. But the trouble with the theory of a gift is that Mr. Farnham did not own the bonds. They belonged to the firm of Farnham & Bowers, and were not the subject of his donation. They came into the hands of the executrix at the sum of $48,650, in settlement with Mr. Bowers and the firm of Ropes & Co., and must be regarded as part of the sum received from Mr. Bowers as surviving partner.

Third. There was an account in the Seamen's Savings Bank which stood in the name of Mr. Farnham from a time prior to June 29, 1880, until his death. The executrix received the amount remaining on deposit in this account and gave her receipt therefor as executrix. Her residuary legatee insists that this account was given to Mrs. Farnham by her husband in his lifetime, and in this regard relies upon a letter from Mr. Farnham to his wife, which is as follows:

"New York, June 29, 1880.

"My Dear Wife: As I am going yachting for a few days, it may be well to make a brief statement of my affairs. A tin box in the 'Burglar' of R. W. Ropes & Co.'s safe at office contains your Naumkeag Stock ctfce, also two $1,000 coupon Republic Valley R. R. bonds, also two $1,000 or one $2,000 Regd. U. S. 4% Bond ctfce; in my Small Ledger, in drawer of safe as above, you'll will find my Seamen's Bank Book, also ctfce for 100 Sharon Spring Valley Hydraulic Gold Company. The Republic Valley bonds and the U. S. 4% Bonds, above, are your personal property, although in my name. The Savings Bank Book as above is wholly yours although in my name. My will is in the 'Burglar'—above—leaving you my entire property. I wish to make one request of you, viz., to immediately execute proper legal documents bestowing property obtained from me to my heirs at law—at your decease. And during your life to assist my sisters Mary and Lucy should they become needy.

"Your husband,        S. H. Farnham."

There is no proof of the delivery of the supposed gift, unless it be contained in the letter quoted. If a gift causa mortis was made in view of the impending dangers of a yachting trip, the gift failed upon the donor's safe return. There is no evidence of delivery, and delivery was necessary to effect a gift, either causa mortis or inter vivos. The letter bespeaks either an intention that the account shall belong to the wife or an assurance that it already belongs to her. In neither case can it be taken to evidence or effectuate a delivery. A statement by a depositor that an account standing in his name, represented by a book remaining in his possession, is the property of another, does not tend to show a previous delivery or assignment of the subject of the alleged gift.

It is consistent with a conviction on the part of the supposed donor that his declaration alone is sufficient to establish a prior gift. If this were the only effect of the letter, it would afford no proof that there had been the delivery which the transaction required; and, if the statement to the wife, "The account is already yours," could be held

to have any tendency to show a former delivery, it would be overborne by the fact, inconsistent with a completed gift, that the account still stood in the husband's name, and that the book, which was the only subject of a manual delivery, was at the time of the declaration in his small ledger in the drawer of a safe belonging to his employers. Regarded, not as a rehearsal of a transaction previously consummated, but as a possible gift resulting from the instant of the letter, there is still the lack of delivery, and the affirmative evidence that no delivery was made, because the bank book, the only symbol of ownership, remained in the supposed donor's hands, not only then, but throughout his life. The harsh result is that there was but an abortive intent to give and no gift.

Fourth. It is objected that the deceased executrix sold Keokuk and Des Moines bonds for $1,573.12, and that her estate is not charged therewith in this account. The statement in schedule D of this sale furnishes no basis for a surcharge. That schedule is not a record of receipts and disbursements. It is a report only of investments, their course and management, and the amount thereof remaining in the hands of the executrix at death. In schedule A the accountants carry the receipts of the executrix; and that schedule, under their verification, purports to show the full amounts from all sources received by their decedent. Non constat but that the proceeds of the Keokuk bonds are embraced in the schedule, and, indeed, the account asserts that they are so embraced. Its averment in this respect must prevail, in the absence of proof. The accountants say that they have answered for all moneys received. An objection is made that they have not. The burden upon the issues so formed is on the objectant, and it is not sustained.

This result is not disturbed by the fact that, as to the sale of another security set forth in schedule D, the accountants, in schedule E, charge themselves with its proceeds. This treatment of the security last mentioned does not gainsay the oath of the accountants that as to the price of the Keokuk bonds they have accounted in schedule A. The natural meaning of the whole account is that, as to the first-mentioned investment, its proceeds are to be found among the general receipts of cash; while, as to the other, not being found in schedule A, it must be the subject of special account.

Fifth. The two items in schedule B, amounting to $2,659.91, for allowance to Ropes & Co., should be approved. These items, though displayed as disbursements, appear in an account rendered by Ropes & Co. as charges against the estate, to be taken in deduction of $15,-610.70, the balance which would otherwise have been payable by them. The accountants, instead of charging their decedent only with the balance found upon a subtraction of these two items, have first charged her with the erroneous balance, and then credited her with the two items as for a disbursement. The account proves, the parties concede, and the court finds that Ropes & Co. made full settlement. It is found that they did not pay more than they owed; and the account, therefore, must be settled upon the theory that either only $12,950.79 was received by the executrix, or that, if she received the greater amount, she paid back in the same transaction the $2,659.91.

Sixth. The fourth paragraph of the will is:

"Fourth. In case the net income from the personal property of my estate over and above the aforesaid annuities to my sisters shall be less than five thousand dollars in any year during the lifetime of my said wife, I hereby authorize my executrix to sell and dispose of such portion of my personal property as may be necessary to provide for an annual income from my personal property to my said wife of five thousand dollars in each and every year, or so much thereof as may be necessary for the payment of personal and living expenses in the style to which she has been accustomed."

The accountants show that there was paid to the widow for the four years following her husband's death, $14,900, and that the net income from the personal property of the estate for the same period was $7,430.54. They, therefore, claim that the balance, $7,469.46, was properly paid out of principal. The provision quoted was for the maintenance of the wife, and her life estate, therefore, began at the death of the testator, and her right to the income which a trustee's investment of this residue would normally afford attached at the time of her husband's death. Cooke v. Meeker, 36 N. Y. 15; Rodman v. Fincke, 68 N. Y. 239; Matter of Harris, 61 Misc. Rep. 563, 116 N. Y. Supp. 270. During the period of liquidation, while the substance of her husband's estate was not yet reduced to her possession as executrix, she was entitled to at least 4 per cent. upon the personalty from her husband's death, if it yielded income equal to or greater than that rate.

It is clear that the firm enterprises, while in process of settlement, made more than a 4 per cent. profit, and that the increment at that rate upon the share of which Mr. Farnham died possessed was more than the sum which Mrs. Farnham used for her support. While, therefore, the sums received by her in liquidation were necessarily principal, and she was therefore excluded from the enjoyment of any unusual commercial profit made during liquidation, she could properly apply to her own maintenance so much of the actual profit thereof, during liquidation, as was necessary for her sustenance during that period. She was entitled to interest on her legacy, if it was earned. She did not exceed this allowance, and the amount of $7,469.46, charged in the account to principal, though disallowed in that form, would be properly charged to the income, which was included in the amounts received from the surviving partner. The result would be the same, and the present form of the account presents no real objection.

Seventh. It is thought to surcharge the account with losses arising from the investment by Mrs. Farnham in improper securities. It is apparent that, in the respects complained of, the investments were not of the class to which executors and trustees should generally be confined; but the fund was in the hands of the widow as life tenant, and not as executrix, and as life tenant she made the investments. Although subject to debts and the expenses of administration, the personal estate left by Mr. Farnham was given to his widow to "possess, use and occupy the same and to receive all the income therefrom." Had she accounted in her lifetime as executrix, as well she might, her account would not have been concerned with the character of the in-

vestments. As executrix she would not have been liable for waste. The surrogate would have had no cognizance of her personal conduct as life tenant, and certainly would have had no power to charge upon her as executrix the loss which as life tenant alone she may have incurred. Had the remaindermen asserted a grievance against her for waste, it would necessarily have assumed the form of an action against her, not as executrix, but personally, for her conduct as life tenant.

Her executors are accounting only in her place, and only as to her acts and doings as executrix. Code Civ. Proc. § 2606. The jurisdiction of this proceeding is defined as the same which the court would have against the decedent executor if his letters had been revoked (same section). If this were the account of the executrix, made by herself, it would not embrace her conduct or liability as life tenant, and she would not be subject to surcharge for waste, if proven. Matter of Blauvelt, 131 N. Y. 249, 30 N. E. 194. The same rule must control the accounting made for her and assimilated to her own in its scope and limitations.

Eighth. In this view the account is incorrect, so far as it charges the accountants with the sums which were delivered by the executrix to herself as life tenant. As executrix she did not die possessed of these sums. By the will they were left to the remaindermen upon her death, and passed to the administrator with the will annexed, subject to the duty on his part of seeing that they reached their destination. This does not apply to items which were considered by the executrix as her own, but which are found to have belonged to the estate. These must be regarded as assets held under administration when she died, but the amounts which were merged in the life estate must be credited as sums paid to the life tenant.

Ninth. The item of $71.11 in schedule E is disallowed.

Tenth. The objection that the account does not contain a charge against the executrix for the furniture in the house of her husband at his death is overruled. The best result that the evidence yields is that this furniture belonged to Mrs. Farnham.

Decreed accordingly.