(122 App. Div. 576.)

BROWN et al. v. BROWN et al.

(Supreme Court, Appellate Division, First Department. December 13, 1907.)

1. WILLS—LIFE ESTATES—INCOME.

Testator authorized his executors to invest for a term of years a specified sum as special capital in a firm of which he was a member, provided the firm should pay interest thereon and a fixed sum annually for the good will of the business and gave the residue of his estate, including the interest and capital in the firm, to his wife for life, to receive the income, with gift over on her death. The investment was made under an agreement with the surviving partners providing for payment out of profits of the interest and the annual sum as a consideration for the sale of the good will of the firm, and a percentage of the remainder of the net profits. *Held*, that such portion of the profits was not principal, as being part of the purchase price of the good will, but was income on the sum invested, and the wife was entitled to such percentage of the profits as income, as against the remaindermen.

2. EXECUTORS—SALE OF PROPERTY—PROVISIONS OF WILL—RIGHT OF REMAINDERMEN TO OBJECT.

Where the will of a partner fixed the price which his surviving partners should pay for the good will of the firm, the remaindermen could not,

in the absence of bad faith, fraud, or collusion, complain that the executors sold on the terms prescribed.

**3. Same—Personal Interest of Executrix.**

Testator authorized the investment of a specified sum in a firm of which he was a partner, and gave the residue of his estate, including the interest in the firm, to his wife for life, with gift over to his children. He appointed his wife executrix and his brother executor. They made the investment authorized, pursuant to an agreement with the surviving partners. *Held* that, though the wife was interested, she had a right to act as executrix until removed, and the agreement, made prior to any proceedings for her removal, was valid.

Appeal from Special Term.

Action by Adelaide E. Brown and another, executrix and executor of Edward M. Brown, deceased, against Adelaide E. Brown and others for the construction of the will of the deceased. From a judgment overruling exceptions to the report of the referee and confirming a judgment in accordance with the report, defendant Emily Louise Brown appeals. Affirmed.

Argued before PATTERSON, P. J., and LAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Theodore H. Silkman, for appellant.

John G. Agar, for respondents.

LAUGHLIN, J. The action was brought to have the will of Edward M. Brown, deceased, judicially construed. Two questions only are presented by the appellant for review. The able opinion of the learned referee disposes of all others raised on the trial satisfactorily to the parties. The first is whether the profits on capital left invested in the business of a fruit auction copartnership firm, of which decedent was a member, by express permission contained in the will, belongs to principal or income; and the other is whether the appointment of Adelaide E. Brown, the widow of the decedent, as trustee of an express trust, she being a beneficiary, was valid.

The firm name of the copartnership was Brown & Seccomb. The decedent appointed his brother and wife his executor and executrix, and authorized them to leave or invest $75,000, "as a special capital and interest in the firm" to remain "invested as a special partnership interest in said firm" for the term of five years after his death, "provided such firm and such business shall be continued by my partners for that length of time, and that said firm shall agree to pay to my said executors or estate interest and income thereupon at the rate of six per cent per annum on said capital, and in addition thereto, the sum of ten thousand dollars ($10,000) annually, for the period of five years, for the good will of said business, the payments of said interest, and additional sum, to be made semiannually." The testator died on the 1st day of December, 1903. The will was duly probated, and after the executors qualified, and on the 12th day of January, 1904, they, individually and not in form as executors, entered into an agreement, in writing, with the surviving partner concerning the copartnership business, and executed concurrently therewith a declaration showing that the investment was for the benefit of the estate, and with a view to carrying into effect the authority contained in the will. The agreement

provided for a new limited copartnership, under the old firm name, to commence on the 2d day of January, 1904, and to continue until the 31st day of December, 1909, a period of six years less two days. It provided that the capital of the firm should consist of the good will of the old firm, of $75,000, one-half of which was to be contributed in cash individually by each of the executors as a special partner, $30,000 to be contributed, as a general partner, by one of the surviving partners, together with his interest in the good will and assets of the old firm, and $23,000 by the other, together with his share in said good will and assets. The special partners were first to receive out of the profits semiannually interest at the rate of 6 per centum on their capital, and, in addition thereto, the sum of $10,000 per annum, payable semiannually. It was then provided that the surviving partners should likewise receive interest on their capital, and that each of the special partners should receive 20 per cent. of the remainder of the net profits. The provision with respect to the payment of $10,000 per annum was modified by a succeeding clause, which limited the payments to five years, and expressly provided that it was to be paid "as a consideration for the value and sale of the good will, stock, and fixtures belonging to the firm of Brown & Seccomb at the date hereof, which said firm has existed and been conducted by Edward M. Brown, Esq., deceased, and said Thomas Rawlinson and George L. Buckman, for several years last past, and that the said Thomas Rawlinson and George L. Buckman hereby agree to purchase the good will, stock and fixtures of the said late said firm by paying the sum of ten thousand (10,000) dollars a year from the income and profits of the copartnership hereby formed for the period of five years, and it is understood and agreed that at the end of said period, to wit, on the first day of January, 1909, the said good will, stock and fixtures, as they now and shall then exist, shall become the property of the said Thomas Rawlinson and George L. Buckman, and that all the interest of Adelaide E. Brown and William Harold Brown in the said firm, except their special capital contributed as aforesaid, and any increase and interest due thereupon, shall cease." After directing the payment of debts and funeral expenses, and authorizing the executors to retain or invest the $75,000 in the copartnership, the testator devised and bequeathed as follows:

"All the rest, residue and remainder of my Estate both Real and Personal, of which I may die seized or possessed, inclusive of my said interest and capital in said firm to my wife, Adelaide E. Brown, during the period of her natural life, to receive the interest, income, rents, issues and profits thereof remaining after the payment of all taxes, assessments, insurance and necessary repairs for and upon said property, and to apply the said net income, etc., to the support of herself and the proper support of my daughter, Emily Louise Brown."

His widow, a daughter, and a son survived him. He gave a legacy of $20,000 to his daughter out of the remainder after the life estate to his wife, and devised the rest of the remainder to his son and daughter in equal shares. The widow has been allowed as income the 40 per cent. of the profits derived from the copartnership business. The daughter contends that the 40 per cent. of the profits of the copartnership is principal, and forms part of the remainder. The principal the-

ory upon which the learned counsel for the appellant makes this contention is that it is manifest that this percentage of the profits was allowed as part of the purchase price of the good will of the old firm, and not for the use of the $75,000 invested by the special partners, because interest at the legal rate is expressly allowed for the use of the money. In effect, the claim is that the $75,000 should be treated as a loan to the surviving partners, and that the estate should have no interest in the profits of the business. In the event that the executors saw fit to continue the investment of $75,000 in the copartnership business, the testator authorized them to sell his interest in the good will to the surviving partner, and he prescribed that the terms of sale should be an agreement to pay therefor $10,000 per annum, payable semiannually during the time the business was continued, which he fixed as a period of five years. It is evident that the executors undertook to execute this authority along the lines planned by the testator. They were vested with discretion as to whether to thus invest the money; and, in exercising it favorably to the wishes of the surviving partners, they may have exacted better terms than those contemplated by the testator, and yet it is not clear that they have. They demanded and received for leaving or investing the money in and thus retaining an interest in the business a percentage of the net profits in addition to interest at the legal rate on their share of the capital. It is to be observed in this connection that interest was not payable in any event by the surviving partners, but only from the profits of the business, and that the investment was subject to the risks of the business, and not a mere loan of money. Nor did the testator contemplate a mere loan of money. He evidently intended that his estate should receive a share of the profits in proportion to its investment of capital; and he manifestly intended that his widow should have the income of all his property, including the profits from this investment for he expressly so provided. Moreover, the $75,000 invested was, of course, principal, and presumably formed part of his estate's share in the copartnership dissolved by his death; but the widow was entitled to the income thereof, and, in running the risk that this might not be 6 per cent., it was not unreasonable that the executors should make it a condition of the investment that the estate should share for her benefit in any net profits.

Stress is laid upon the finding that the good will was worth more than the price fixed therefor by the testator. There is nothing to give rise to the inference of bad faith or an attempt on the part of the executors to procure for one of them—the life tenant—an advantage at the expense of the remaindermen. The testator fixed the price that his surviving partners should pay for the good will; and, in the absence of bad faith, fraud, or collusion, the remaindermen cannot complain that the executors sold on the terms he prescribed. The argument that on this construction the business might be very profitable at the outset, and yet, after the life tenant realizes many times the interest on the principal invested, it might fail, resulting in a loss to the remaindermen, is answered by the authority of the testator to invest in the partnership business, which necessarily subjected the investment to the hazards of a business venture. The risk of loss of principal sheds no

light on the question presented for decision, which is: Did the executors exact the agreement, and did the surviving partners agree to pay the 40 per cent. of the profits as part consideration for the good will? The agreement negatives any such inference, and the evidence does not impeach it. It shows the ordinary agreement for interest on capital invested as distinguished from loaned and for a show of profits in proportion to the amount of capital contributed.

The learned counsel for the appellant contends that the life tenant, who in the first instance receives all of the income, is incompetent to act as trustee. If this were so, its effect upon the decision under review is not stated. Assuming the trustee to be incompetent as claimed, that would not invalidate the trust. There has been no motion to remove the trustee, or to have a substituted trustee appointed. If the theory be that it renders the agreement with the surviving partners void, we are unable to agree with that view. In any event, the other executor was competent to make the agreement, and the mere fact that the life tenant joined in it would not invalidate it. Moreover, the testator expressly authorized her to act in the premises. With knowledge that she might have an interest adverse to that of the remaindermen, he vested discretion in her to act with her coexecutor; and, until enjoined or removed, she is competent to act. It may well be that he fixed the prices to be charged the surviving partner for the good will, in order that she might have no interest adverse to the interests of the remaindermen. She is not trustee and beneficiary of the same interest. She, with her coexecutor, held the legal title to the $75,000, the same as to the rest of the estate, in trust to invest and preserve for the remaindermen. Income while in the hands of her coexecutor would be held in trust for her, but upon reaching her hands from any source the trust with respect thereto ceased, and it became her individual property, subject only to the obligation to apply it in part toward the support of her daughter.

It follows that the judgment should be affirmed, with costs. All concur.