LEACH *et al. v.* McCREARY *et al.*

(*Knoxville,* September Term, 1945.)

Opinion filed December 1, 1945.

GREEN, WEBB, BASS & McCAMPBELL, of Knoxville, for complainant.

S. FRANK FOWLER, of Knoxville, for defendant, guardian *ad litem* (appellant here).

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a controversy between life beneficiaries and remaindermen over dividends from mining stocks. The shares of stock passed under the residuary clause of the will of one Swepson to trustees. The trustees were to pay the net income in fixed proportions to three nieces of the testators for their lives and, upon the death of any niece, to pay the income from such niece's share to her children for their lives and upon the death of the children of any niece, the trust as to that part of the estate ended and, in the language of the will "this part of the principal shall be absolutely in fee to the living children or lawful issue of children of my said nieces."

The exact question presented is whether the life beneficiaries are entitled to all of the dividends from the mining stocks. The guardian *ad litem* for minor remaindermen contends that these securities being wasting assets an apportionment of the income therefrom should be made for the protection of the remaindermen. The chancellor decreed the life tenants to be entitled to all the income so arising for the duration of their estates and the guardian *ad litem* has appealed.

The shares of stock in two coal mining companies were included in the residuary clause of the Swepson will. Various other securities passed to the trustees under this clause.

By agreement between the officers of the two coal mining companies and the collector of internal revenue large percentages of the dividends declared by the corporations were classed as depletions, deductible from taxable income. Each year these companies, according to a formula agreed on with the collector of internal revenue, advised

their shareholders what portion of their dividend was to be regarded as depletion dividend and what portion was to be regarded earned income. So much of the dividends received by the trustees thus characterized as depletion dividends has been retained by them and added to the *corpus* of the trust estate. It is conceded that the formula for apportionment adopted by the officers of the coal mining companies and the collector of internal revenue is not binding in the controversy before us. However, this is not material if the chancellor was right in holding the life beneficiaries entitled to all of the dividends.

The rights as between life tenant and remainderman in respect of property, estates or securities of a wasting consumable or perishable nature have been considered by the courts in many cases. Our own cases are *Henderson* v. *Vaulx*, 18 Tenn. 30; *Woods* v. *Sullivan*, 31 Tenn. 507; *Forsey* v. *Luton*, 39 Tenn. 183, 184; *Vancil* v. *Evans*, 44 Tenn. 340; *Fraker* v. *Fraker*, 65 Tenn. 350. Decisions of other courts are collected in notes, 77 A. L. R. 753; 109 A. L. R. 234, and 113 A. L. R. 1193.

The general rule is thus stated in *Henderson* v. *Vaulx*, 18 Tenn. 30, 34:

"It appears from numerous cases, to which it were useless to refer the learned counsel, because relied on by them and read on the trial, that where a specific bequest for life, with or without limitation in remainder, is made of wine, corn, hay, or other things, whose use consisted in being consumed, the first taker is entitled absolutely. But when this bequest is residuary, and not specific, then such chattels must be sold, and the interest only of the proceeds given to the first taker, and the principal is preserved for him in remainder."

This rule is frequently applied to property not strictly

consumable in use but which is impaired or its value depleted by use.

All the authorities recognize as of proper application in such cases the general rule that the intention of the testator must control. A sale of property such as we are considering for reinvestment necessitates a conversion and a direction by the testator that the property shall not be sold operates to take a case out of the rule stated in *Henderson* v. *Vaulx, supra.* It is so recognized in that case and also in *Vancil* v. *Evans, supra.* An examination of the decisions leads to the conclusion that the rule requiring a conversion or apportionment of income is not favored and a slight indication that testator desired the life tenant or the trustee for the life tenant to hold the property operates likewise to defeat the application of the rule. Thus as said by the editor of a note, 77 A. L. R. 753, 774: ''Authorization of, or direction to, the trustees or executors to retain the property, or sell it at a designated time or at their discretion, or distribute the same at the conclusion of the tenancy for life, has, in many cases, been held to be indicative of an intention to preclude the operation of the general rule.'' Reference is made for support of the foregoing to many cases too numerous to be here reviewed. We may especially refer to two of them, first, however, setting out the 8th clause of the Swepson will as follows:

''8th. I hereby give express power and authority to the trustees hereinafter appointed, and to their successors in trust, to sell for the purpose of reinvestment, or for division, all or any part of the bonds, stock or real estate belonging to my estate, and in case of real estate to make proper deeds therefor, the purchasers not to be bound to see to the application of the proceeds, but all

of the then trustees shall concur and consent to such sales.''

The entire will is set out in *Leach* v. *Cowan*, 125 Tenn. 182, 140 S. W. 1070, Ann. Cass. 1913C 188, where it was before this Court for construction on another point.

In *Re Nicholson*, [1909] 2 Ch. III, shares in a land improvement company were given by the residuary clause of a will to trustees to pay over the income therefrom to a life tenant with remainder over. The will authorized and empowered the trustees ''at their discretion to sell and convey all or any part of my said real estate and to collect and get in all or any part of my personal estate or to permit it to remain on investments the same as those in which it may be invested at the time of my death.'' The Court treated the stock of the land improvement company as wasting assets and the question arose as to whether there should be a conversion or apportionment of the income. The court declined to make such an order and said:

''The powers given by the will are absolute discretionary and alternative powers to convert the estate or to permit it to remain in the same state of investment as at the testator's death. If therefore the testator has said that his trustees may retain any part of his estate in the same state of investment as at the time of his death, and if an investment at his death consisted of what is called a wasting security, how can I say that, as between tenant for life and remainderman, he intended that a particular investment should be converted into money? He has said that it may be retained, or, in other words, that in the case of wasting securities, if retained by his trustees in the proper exercise of their discretion, the persons entitled in remainder are to take their chance

of the tenant for life dying during the continuance of the security.'' 2 Ch. at page 117.

In *Re Pitcairn*, [1896] 2 Ch. 199, there was a bequest to trustees of a reversion treated as a wasting asset, the bequest being to a tenant for life with remainder over. The will gave the trustees power to sell and dispose of all or any part of the testator's estate if they should consider it expedient at such price or prices as they might think proper. The court in that case declined to decree a conversion or apportionment of the income and, referring to the powers given to the trustees, said:

''This seems to me to give the clue to the meaning of the will. In my opinion, this power given to the trustees to sell and dispose of the estate 'if and when they shall consider it expedient' means that they are to have the power of selling or disposing of it if they think it expedient and when they think it expedient; and if they have power to do this they necessarily have power not to do it. If they have the power to sell if and when they think fit, then they necessarily have power not to sell unless they think fit; and that, in my opinion, amounts to an express power to the trustees to convert the estate or not as they think fit.

''It seems to me that several authorities shew that, when a testator has directed that the conversion of his estate shall take place at some time other than that at which the rule of the Court would make conversion necessary, the rule of the Court has no application. I have read a passage from *Morgan* v. *Morgan* [14 Beav. 72] in which this was pointed out by the Master of the Rolls.

''In the present case the testator has not himself fixed the period of conversion, but he has given the option of saying when the conversion is to take place to another person; and this seems to me to be equally effective in

negativing the rule of the Court which would require the conversion to take place immediately, or as soon as possible, after the death of the testator.''

■ Upon reason and these authorities we reach the conclusion that the testator desired a conversion of the securities included in the residuary clause of his will to be made only at the discretion of the trustees. That he desired the life tenants to have the use and benefits of the specific properties so long as the trustees deemed it expedient. Accordingly that no conversion of the property or apportionment of the income should be undertaken by the Court.

■ The guardian *ad litem* suggests that the value of these mining stocks at the time the trust herein was set up be ascertained and that the life tenants be allowed a reasonable return upon that value to be paid out of the dividends and the balance of the dividends be retained for the benefit of the remainderman. Such plan, however, while it would avoid a technical conversion, would accomplish the same result so far as the life tenants are concerned. The plan might work out to the advantage of the life tenants or it might prove greatly to their disadvantage—this depending on whether the dividends from the shares of stock were small or large. It would subject the life tenants. to a hazard, which hazard the testator committed to the discretion of the trustees, not to the Court.

We think that Scott on the Law of Trusts, Vol. 2, Sec. 239, and Restatement of the Law of Trusts, Vol. 1, Sec. 239, recognize that a contrary intention of the testator will always defeat the application of the general rule as to conversion or apportionment of income of wasting property. See also 33 Am. Jur. 856, 857.

The conclusion we have reached is in line with *Fraker* v. *Fraker*, 65 Tenn. 350, relied on by the guardian *ad litem*. In that case, where there was a bequest of livestock in specie, the Court gathered from the will that the testator desired the life tenant to have the use of the animals during the term of her estate. Such property may be described as a wasting asset.

The testator here was a bachelor and evidently his three nieces for whom he made such ample provision were near and dear to him. The ultimate remaindermen were doubtless unborn at the time of the execution of this will, and testator obviously would have desired these nieces, rather than remote unborn relatives, to enjoy the fruits of his estate.

It results that the decree of the chancellor holding the life tenants entitled to all of the dividends from these shares of stock will be affirmed.