JOHN H. McFADDEN, JR., et al., Executors and Trustees under the Will of Alexander B. McFadden, Deceased, v. MRS. WATSON K. BLAIR et al. —304 S. W. (2d) 93.

Western Section.    August 23, 1956.

Petition for Certiorari denied by Supreme Court June 7, 1957.

436

Armstrong, McCadden, Allen, Braden, & Goodman, Memphis, and Saul, Ewing, Remick & Saul, Philadelphia, Pa., for executors and trustees.

Donelson & Adams, Memphis, for Mrs. Watson K. Blair.

Edward P. Russell, James W. McDonell, Jr., and Canada, Russell, Turner & Alexander, Memphis, for Pennsylvania Co. for Banking and Trusts.

W. J. Chiapella, Memphis, Guardian ad Litem, for appellees.

BEJACH, J. ■ This cause involves the construction of the will of Alexander B. McFadden, deceased, who died a resident of Shelby County, Tennessee, February 14, 1948, and requires instruction and guidance to be given to the executors and trustees under said will as prayed for in their bill. The bill, as originally filed, purports to be in the nature of a bill of interpleader seeking to have the Court determine whether the life tenant, income beneficiary of the estate, or the corpus of the estate, for the benefit of remaindermen, is entitled to profits made in the partnership of George H. McFadden and Brother between the date of the death of the testator, Alexander B. McFadden, and the end of the fiscal year of said partnership, of which partnership Alexander B. McFadden, deceased, was a member. We think it is clear that the bill can not be properly treated as one of interpleader, because the complainants do not

take the position of disinterested stakeholders. On the contrary, they take the definite and positive position that the life tenant beneficiary, Mrs. Watson K. Blair, is entitled to the profits involved, and they have appealed from the decree of the Chancellor's ruling to the contrary. We think, however, that under the authority of Vaccaro v. Cicalla, 89 Tenn. 63, 14 S. W. 43, and Nashville Trust Co. v. Tyne, 194 Tenn. 435, 250 S. W. (2d) 937, the bill was properly filed for instruction and guidance of the executors and trustees and for construction of the will of Alexander B. McFadden, deceased, and that, in that aspect, it was properly heard and sustained by the Chancellor.

The bill was filed by the executors and trustees under the will of Alexander B. McFadden, deceased, for determination as between the widow as life income beneficiary and the children and their issue as remaindermen to determine who is entitled to post-death partnership profits of the firm of which decedent was a member,— which profits amounted to a net sum of $100,592.02 after deducting therefrom income taxes attributable thereto. Although it was the opinion of the executors and trustees and their counsel that under the will these post-death profits constituted income payable to the widow, they also felt that as there was no Tennessee decision squarely on the point, the executors and trustees could not safely act on any construction that they themselves might think proper, and that an adjudication of the respective rights by the Court was both proper and necessary. The Chancellor held that as the continuation of the partnership business from the date of decedent's death, February 14, 1948, to the end of the fiscal year of the partnership, July 31, 1948, was not voluntary nor in the discre-

tion of the executors and trustees, but was required by the terms of the partnership agreement, these profits should be apportioned between income and corpus by computing what sum, if received at the testator's death, adding interest at 6%, would produce the amount afterward actually received from the partnership by investing the original sum so computed as principal and distributing the residue as income. On this basis, the Chancellor held:

"That since the total value of the testator's partnership interest as of July 31, 1948 including testator's share of $1,740,121.61, that the sum which if year ending July 31, 1948 is an amount of $1,740,121.61, that the sum which if invested at 6% interest for the period from February 14, 1948 to July 31, 1948 would produce said amount is $1,693,481.43, which sum should be treated by the executors and trustees as a part of the corpus of the estate, and that the difference between the two sums being in the amount of $46,640.18, should be distributed as income less the proportion of tax charged against same as hereinafter set forth."

This holding resulted in a decree which adjudged the respective rights as follows:

"Post-Death Profits Payable to Widow as Income:

Gross to Income     $ 46,640.18
Less income tax
attributable thereto     21,527.67
Net to Income                    $25,112,51

Post-Death Profits to be retained as Corpus:

Gross to corpus     $140,183.26
Less income tax
attributable thereto    64,703.75
Net to corpus              75,479.51

Total post-death profits for said period   $100,592.02''

Prior to the filing of the bill in this cause, the widow of Alexander B. McFadden, Jr. had remarried, and is now Mrs. Watson K. Blair. She was sued in that name. The other defendants are the three children of Alexander B. McFadden, deceased, all minors, viz., Mary Josephine McFadden, George McFadden, and John H. McFadden, and the Pennsylvania Co. for Banking and Trusts, a Pennsylvania corporation which is guardian of the estates in the Commonwealth of Pennsylvania of Mary Josephine McFadden, George McFadden, and John H. McFadden. Complainants sue and defendants are sued in their individual capacities and also as virtual representatives of all persons, whether in esse or in posse, and whether sui juris or under disability, who now have or who in the future may take any interest of any character in the estate of Alexander B. McFadden, deceased. The original complainants, the executors and trustees, under the will of Alexander B. McFadden, deceased, and also Mrs. Watson K. Blair, appealed from the decree of the Chancery Court. After the appeal was perfected, John H. McFadden, Jr., one of the executors and trustees, died, and his death is suggested by a stipulation filed in this Court,—which stipulation also recites that the rights under the will of Alexander B. McFadden survived to the other complainants and that therefore there is no abate-

ment by the death of John H. McFadden, Jr., nor need for a revivor as to him or his estate.

The author of this opinion was Chancellor at the time the original bill was filed, and he appointed the guardian ad litem for the minor defendants, but had no other participation in the litigation in the Chancery Court, and all of the lawyers at the time of the hearing in the Court of Appeals, stipulated that he might properly participate in the trial of this cause in this Court.

There is no dispute as to the facts of this case,—all of which are established by depositions taken on behalf of the complainants. These facts are as follows:

Alexander B. McFadden was a resident of Shelby County, Tennessee at the time of his death, testate, on February 14, 1948. He was survived by his widow, Mrs. Josephine McFadden, now Mrs. Watson K. Blair, and their three minor children, viz., Mary Josephine McFadden, George McFadden, and John H. McFadden, then respectively nine years, six years, and nine months of age,—all of whom resided with decedent in Shelby County, Tennessee at the time of his death. By decedent's will dated March 10, 1944 which was probated March 11, 1948 in the Probate Court of Shelby County, Tennessee, the widow was bequeathed absolutely the tangible personal property; and the residue of his estate, after payment of debts and charges, including taxes, was devised and bequeathed in trust to John H. McFadden, Jr., Alexander Cushing, and Girard Trust Co. of Philadelphia, who were named as executors and trustees of the said will, to hold in trust to pay the income to the widow during her life, and upon her death to pay the income in the proportion of two parts to each of decedent's sons and

one part to each of decedent's daughters living at the time of the death of said widow, or to their respective issue at that time of a deceased son or daughter, such issue being entitled to their parent's share of income for and during the life of each said child or issue of same, living at the time of the death of decedent's wife, with the provision for termination of the trust upon the expiration of a period of twenty-one years after the death of the last survivor of the children and issue of deceased children of the testator living at testator's death. The trust estate was thereupon finally to vest as remainder in the then living descendants of testator, per stirpes, in the proportion of two shares for each male and one share for each female.

At the time of his death, decedent was a member of the partnership of Geo. H. McFadden & Bro. which was an old and successful organization engaged in the cotton business in Memphis, Tennessee and elsewhere in the United States. The partnership agreement of said firm provided that its fiscal year should begin August 1st of each year and terminate July 31st of the succeeding year, and further provided that in the event of the death of a partner during any fiscal year "the partnership shall continue until the end of such year and the interest of the deceased * * * partner shall likewise be so continued, being credited with profits less withdrawals or charged with losses plus withdrawals". The partnership agreement further provided that upon termination of the fiscal year in which the death of a partner occurred, the interest of a deceased partner should be bound for a limited period in a limited partnership agreement, the interest of the decedent's estate therein to be that of a

limited partner which, during the existence of such limited period, would be completely liquidated, with the right accorded to the general partners by said agreement of accelerating the limited period of liquidation. The partnership agreement provided that the determination of the value of any interest of any partner or the estate of any deceased partner by Lybrand, Ross Bros. & Montgomery, Certified Public Accountants, should be final and binding upon all partners and the legal representatives of a deceased partner.

The value of decedent's partnership interest as of February 14, 1948, the date of his death, was determined by said accounants in accordance with the provisions of the partnership agreement to be $1,525,000.29, which amount was paid to the executors, together with the sum of $169,377.73 representing decedent's special deposit account with said partnership, all of said sums being credited by the executors as part of the corpus or principal of decedent's estate.

The decedent's share in the net profits of said partnership for the period from the date of his death, February 14, 1948, to the close of the partnership's fiscal year, July 31, 1948, amounted to the sum of $186,823.44, divided as follows:

Ordinary operating profits_____$71,949.87
Capital Gains liquidated prior to
July 31, 1948 from trading in
cotton future contracts which
was a usual and customary part
of the operations of the partnership _____ 48,305.49

Capital Gains from similar cotton future contracts unliquidated at July 31, 1948, but computed as of that date _____ 30,296.65

Interest on decedent's capital in said partnership _____ 22,734.91

$173,286.92

And, due to subsequent adjustments, the decedent's share in post-death profits of said partnership for said period from death to close of the fiscal year, July 31, 1948, amounted to: _____ $173,286.92

Additional operating profits as per adjustment made in 1949 ____ 11,914.27

Additional as per adjustment made in 1950 _____ 1,622.25

13,536.52

Total post-death profits for said period _____$186,823.44

The income taxes attributable to said post-death profits which were paid by the executors amounted to the sum of $86,231.42. Same were treated as income for income tax purposes by the executors and trustees, and the income tax on same paid accordingly. They were so included by the executors and trustees in the gross income reported for the years 1948, 1949, and 1950, on which income taxes were paid; but the executors deferred distribution of said net amount of post-death profits of

$100,592.02 and filed this suit pursuant to an order of the Probate Court for an adjudication of the rights thereto as between the income beneficiary and the remaindermen.

Decedent's partnership interest in the firm of Geo. H. McFadden & Bro. constituted nearly three-fourths of his entire gross estate. The character of the business of this partnership and its accounting methods had been in operation for many years, substantially without change and with uniform success. Neither the character nor the marked success of the operations of the firm for the fiscal year ending July 31, 1938 were in any way unusual.

Neither the partnership business nor decedent's interest therein was in any way mentioned specifically in decedent's will. The only property specifically mentioned in the will was the non-income producing tangible personalty which was bequeathed to the widow, consisting almost entirely of the household furnishings in decedent's home.

The decedent's interest in the partnership, as well as other property, real and personal, was devised and bequeathed as part of the residue by Item III of his will. By Item VII of the will, the executors, for the purpose of administering the estate, and the trustees, for the purpose of administering the trust and ultimate distribution of the residuary estate, were given the following broad powers and discretions:

"1. To sell any real estate which may at any time form part of my estate for such prices, upon such terms, in such way and manner, and for such interests and estates as may be deemed wise, and to make good deeds therefor to the purchaser or purchasers thereof without any obligation on the latter to see

to or be responsible for the application of the purchase money.

"2. To let on ground rent, release or extinguish the same, wholly or partially, whether by reduction of the amount of rent to be paid or otherwise; to mortgage, square, exchange or join in the partition of real estate, and to let or demise the same upon such terms and for such period of time as may be deemed wise.

"3. To repair, alter or improve any real estate or other property.

"4. To retain in their discretion, without liability, any of my investments in the form in which they may be at the time of my decease.

"5. To invest and reinvest, alter, vary and change investments and reinvestments from time to time, at discretion, not being confined to what are known as 'Legal Investments', any Statute to the contrary notwithstanding, including specifically, the right at discretion to invest in the common and/or preferred stock of any corporation.

"6. To purchase investments at a premium and to charge the premium over to principal or income, or partly to principal and partly to income, as they shall deem best.

"7. To sell any securities or other personal property which may at any time form part of my estate for such prices, upon such terms, in such way and manner, and for such interests and estates as may be deemed wise, and to make good transfers and

assignments therefor to the purchaser or purchasers thereof without any obligation on the latter to see to or be responsible for the application of the purchase money.

"8. To exercise any option to subscribe for new stocks or bonds or certificates or other instruments in the nature thereof which may be given to them as the holders of any stocks or bonds or certificates or other instruments in the nature thereof belonging to my estate.

"9. To join in any plan of lease, mortgage, or consolidation, exchange reorganization or foreclosure of any corporation in which my estate may hold stocks or bonds or other securities and to deposit such stocks, bonds or other securities under such plan."

■ The Chancellor found, in the determination of the case, that all categories of the post-death profits must receive the same treatment, as the general partnership was a trading partnership, and the so-called capital gains were an incident to the ordinary and usual business of the partnership, and also as the partnership agreement provided that the appreciation of assets must be considered part of the net profits of the partnership. We concur in this ruling of the Chancellor.

In commenting upon the position of the complainants as executors and trustees and the widow as income beneficiary, the Chancellor stated:

"In support of their position, the complainants and Mrs. Blair cite cases, principally from New York and Pennsylvania.

"These cases generally appear to be instances of voluntary investment by executors or trustees in a partnership or a continuing investment for the purpose of production of income at the direction of the testator, under which circumstances the Court would have no difficulty in holding that the income from such partnerships belonged to the life tenant."

The Chancellor concluded from the above quoted provisions of the partnership agreement, however, that there was no voluntary investment by the executors in this case and therefore held:

"The Court considers the issues of this cause met by the decision in Westcott, Trustee, against Nickerson, 120 Mass. 410, wherein it is said:

" 'And where, as in the present case, the property is then invested in a commercial partnership, and is directed by the testator to remain in that form for a short time, merely for the purpose of winding up the business of the partnership and ascertaining the amount of the fund, and not for the purpose of a lasting investment, the amount received from the winding up of the partnership is to be distributed between the tenant for life and the remainderman, by computing what sum, if received at the death of the testator, adding interest at six per cent with annual rests, would produce the amount afterwards actually received from the partnership, and by investing the original sum so computed, as principal, and distributing the residue as income.' "

As stated above, appeals were prayed and perfected by the executors and trustees and, also, by the life tenant

income beneficiary, Mrs. Watson K. Blair, widow of the deceased.

The executors and trustees have filed two assignments of error, which are as follows:

"1. The Court erred in refusing to hold that the share of the decedent's estate in the post-death profits of the partnership of Geo. H. McFadden & Bro. for the period from the date of death, February 14, 1948 to the end of the fiscal year July 31, 1948, less only the tax burdens attributable thereto, constituted income distributable to the widow as income beneficiary.

"2. The Court erred in holding that there was any basis for the application of a presumption that the testator intended that there should be an apportionment of decedent's share of said post-death profits as between the income beneficiary and the remaindermen."

The widow and life income beneficiary, Mrs. Watson K. Blair, through her solicitors has filed four assignments of error, which are as follows:

"1. The Court erred in declining and refusing to hold that the estate's share of the post-death profits of the general partnership of Geo. H. McFadden & Bro. for the period from February 14, 1948, the date of Alexander B. McFadden's death, to July 31, 1948, the end of the partnership's fiscal year, were, for estate accounting purposes, income which were distributable to the widow, Mrs. Watson K. Blair, as income beneficiary.

"2. The Court erred in applying the doctrine of apportionment to the estate's share of said post-death profits and further erred in holding that there was any basis whatever for presuming that the Testator, Alexander B. McFadden, intended that there should be any such apportionment of said profits between the income beneficiary and the corpus of the trust.

"3. The Court erred in holding that the New York case of In re Miller [64 Misc. 232], 119 N. Y. S. 52, was authority for its holding in this case and in holding that said case is in any manner or respect applicable to the facts or questions involved herein.

"4. The Court erred in finding that Alexander B. McFadden's interest was continued in the general partnership of Geo. H. McFadden & Bro. from the date of his death to the end of the partnership's fiscal year merely for the purpose of an orderly liquidation of his interest therein, and the Court further erred in holding that the purpose for the continuation of the interest of a deceased partner in the general partnership until the end of the then fiscal year had any bearing whatever or was in any way relevant to the determination of the principal issue involved in this case."

These assignments of error present only one major question for decision by this Court, which is purely a question of law, viz., whether the income earned on the deceased partner's investment in the partnership of Geo. H. McFadden & Bro. between the date of his death and the end of the fiscal year of the partnership, should be treated as income, and therefore distributed to the life

income beneficiary, Mrs. Watson K. Blair, or whether they should be treated as corpus of the deceased's estate subject only to equitable income thereon in favor of the life tenant income beneficiary, and allocated to the corpus of the estate for the benefit of the ultimate remaindermen.

These assignments of error present, also, one other subsidiary or incidental question, which is partially a question of fact, viz., whether or not the Chancellor erred in finding as a fact that Alexander B. McFadden's interest was continued in the general partnership of Geo. H. McFadden & Bro. from the date of his death to the end of the partnership's fiscal year, merely for the purpose of an orderly liquidation of his interest therein; and therefore whether the Chancellor erred in applying this finding of fact as a reason for determining that the profits involved should be treated as corpus rather than income.

Since the evidence in this cause is undisputed, and all questions to be decided are, therefore, questions of law, we think that the provisions of Sec. 27-303, Tenn. Code Ann., which provides that the trial of this case in this Court shall be de novo with a presumption that the Chancellor's decree is correct unless the evidence preponderates against his ruling, is not applicable.

Since the Chancellor's ruling was predicated almost entirely on the Massachusetts decision of Westcott v. Nickerson, 120 Mass. 410, and In re Miller, 64 Misc. 232, 119 N. Y. S. 52; 138 App. Div. 885, 122 N. Y. S. 1136; 199 N. Y. 564, 93 N. E. 1124, we deem it advisable to give an analysis of the state of the law in Massachusetts and New York before discussing Tennessee authorities,

which, although not exactly in point, are, we think, sufficient to point to way for our decision.

The Massachusetts case of Westcott v. Nickerson, 120 Mass. 410 was decided largely on authority of an earlier Massachusetts case, Kinmonth v. Brigham, 5 Allen 270, 87 Mass. 270. The case of Kinmonth v. Brigham involved disposition of part of testator's estate which consisted of an interest in a partnership which was to continue for four years from February 4, 1948. Article 11 of the partnership agreement involved, provided that if either of the general partners died or violated the agreement, the testator, who was a special partner, or his representatives should have the right to dissolve the partnership, take possession of the assets and carry on the business. The partnership agreement made no provision for withdrawal or conversion of the special partner's investment in the event of his death during the four year term. The testator's will did not grant his personal representatives any broad powers of investment, but did contain the following provision:

"Eighth. Whereas by the later part of the 11th article of the contract between myself and partners, provision is made for the death of either of the general partners; now in such an event, my direction is that my executors shall not avail themselves of that provision, unless they see fit."

Notwithstanding this authorization by the testator to continue the investment of his estate in the partnership, the Massachusetts court, as did several earlier English cases, extended the doctrine of conversion and apportionment, originally established by the English case of Lord Howe v. Earl of Dartmouth, 7 Ves. 137 (1802) for

application to wasting or depleting assets to the investment in the partnership, on the theory that it was capital at risk and therefore not a proper investment for trustees under the law of the State of Massachusetts. The Massachusetts court, therefore, held that the life income beneficiary, the testator's widow, was not entitled to the post-death partnership profits as such, but only to the interest thereon, treating his entire estate as if it had been converted as of the date of his death. In reaching that decision, the Court said:

"If the investment is not such as this court would sustain them (the trustees) in making, it should not be allowed to continue but should be converted. Its value as a fund should be ascertained as of the time when the enjoyment of the issue of it is to commence; and the fund treated as if it had at that time been converted into such an investment as the court would sanction.

"We are of the opinion that there is nothing in the will which indicates an intention that (the life beneficiary) should enjoy the income of any particular property which the testator possessed in specie." Kinmonth v. Brigham, 5 Allen 270, 87 Mass. 270.

Some thirteen years after the decision of Kinmonth v. Brigham, the Massachusetts court had for decision the case of Westcott v. Nickerson. In that case the testator was, at the time of his death, a member of a commercial partnership. There were no articles of partnership. The testator devised and bequeathed the residue of his estate to a trustee 'to satisfy and prudently invest same and pay over the income and interest thereof' in equal parts to his children for life with the remainder

in fee to his grandchildren. The trustee was given no broad powers of administration or investment, but the will did contain the following clause with reference to the partnership:

"It is my will that the business of the firm of S. Westcott and Son shall be continued until the first day of March following my decease, and said business shall be settled and wound up as soon after said first day of March as can safely and prudently be done."

The Massachusetts court held that the facts of this case were insufficient to remove it from the rule of Kinmonth v. Brigham, 5 Allen 270, 87 Mass. 270, and rendered a decision applying the doctrine of conversion and apportionment, the pertinent part of which opinion is quoted in the finding of fact and opinion by the Chancellor in the instant case. Westcott v. Nickerson, 120 Mass. 410.

The decision in this case was later approved by the Massachusetts court in Hemenway v. Hemenway, 134 Mass. 446 and in Mudge v. Parker, 139 Mass. 153, 29 N. E. 543.

With the law thus settled in Massachusetts, in the case of Mudge v. Parker, 1885, 139 Mass. 153, 29 N. E. 543, the Massachusetts court ignored the trend against applying the rule of apportionment, and applied the law as established in the earlier Massachusetts cases. With reference to the trend against applying the law as thus applied in Massachusetts, it is said in a note in 77 A. L. R. 753, 774, as follows:

"The inclination of the courts in the more recent cases has been towards allowing slight indications of intent to prevent the application of the general rule."

If this Court were to follow the decisions of the Massachusetts courts, Mudge v. Parker, 139 Mass. 153, 29, Mass. 410, and other Mass., cases cited, would constitute ample authority for affirming the decision of the Chancellor which was, in large part, based upon these decisions.

The Chancellor's opinion also relied upon In re Miller, 64 Misc. 232, 119 N. Y. S. 52; 138 App. Div. 885, 122 N. Y. S. 1136, affirmed without opinion in 199 N. Y. 564, 93 N. E. 1124.

Before taking up and discussing the Tennessee cases, we will discuss at some length, the New York decisions including the case of In re Miller.

The leading case in point in the State of New York is In re Slocum, 1901, 169 N. Y. 153, 62 N. E. 130, 131, decided by the Court of Appeals, the highest court of the State of New York. In this case, the testator left the residue of his estate for life to his wife and son with a remainder over. The will provided that the executors, as trustees, should convert all of his realty and personalty into money as soon as it could conveniently be done without prejudice or injury to the estate. The principal asset of the estate considered of the testator's interest in a partnership engaged in the grocery business. The articles of partnership permitted the business to be continued until the first of January following a partner's death, provided that the executors and the surviving partner consented thereto. After the death of the

testator, the partnership was continued until the following January 1st. Holding that post-death profits of the partnership were income payable to the life tenants, the Court said:

"The executors contend that the $21,673 was income from the investment made by the testator himself, and that it was payable as income under the will. We concur in this view. It is true that the testator first provided for the conversion of his estate into money, and then its investment in the securities he mentioned, so that it would produce income. But he knew that he had himself invested the greater part of it in the business of his firm, under articles which provided that, if he should die during the existence of the partnership, it should, with the consent of his executors and surviving partners, be continued in the firm business until the January following his death, and thus until then, in all probability, and as the event proved, be productive of income. * * * He does not distinguish between the income to be derived from his investment in his firm and the income to be derived from the investments to be made by his executors, although, as we have seen, he must have had both in mind. The word 'income' is used as a whole, and, of course, embraces all its parts."

In the case of In re McCollum, 1903, 80 App. Div. 362, 80 N. Y. S. 755, the executors continued to operate the testator's individually owned business without any specific direction or authority to do so under the will. In the controversy which arose between the life tenant and the remainderman as to whether the post-death profits

of the business were for estate accounting purposes, income, or increment of corpus, the Court said:

"There is no restriction in the will to investments in specified securities, upon which to base an argument that the testator intended to limit her income. On the other hand, it seems clear that the testator intended that his widow should receive during her life the entire benefit of the usufruct of the corpus * * *. It does not appear that the amount received by the executors and paid to the life tenant constituted an increase of the corpus, but, rather, that it was the earnings of the capital invested. * * *

"I am of the opinion that the life tenant is entitled to all of the income accruing from the date of the testator's death."

Citing In re Slocum, 169 N. Y. 153, 62 N. E. 130. In re McCollum, 80 N. Y. S. 755, 756.

In the case of In re Weaver's Estate, 1907, 53 Misc. 244, 104 N. Y. S. 475 the testator left a residue of his estate in trust, naming his wife as life income beneficiary, and providing for certain distributions of the principal after her death. Testator was a member of a partnership. He had contributed no capital to the firm, and had no capital account on the books. However, the firm used his seat on the New York Stock Exchange, which, in effect amounted to testator's capital contribution. Pursuant to the partnership agreement, the firm was to continue for sixty days after the death of any partner. The firm was so continued after testator's death, and the share of the post-death profits for that period to which testator would have been entitled, if living, amounted to some $5,500.

The court held that these post-death profits were income payable to the life tenant.

A like result was reached in the case of Brown v. Brown, 1907, 122 App. Div. 576, 107 N. Y. S. 864. This case involved a controversy between the widow, as life tenant, and testator's daughter, as remainderman. The court held that the lift tenant was entitled to receive the estate's share of the post-death profits of a partnership of which the testator was a member during his lifetime.

The case of In re Miller, 1909, 64 Misc. 232, 119 N. Y. S. 52; 138 App. Div. 885, 122 N. Y. S. 1136; 199 N. Y. 564, 93 N. E. 1124, involved a very unusual set of facts. At the time of testator's death he was a member of a partnership. There were no written articles of partnership, and, insofar as the record shows, no provisions whatever for continuing business after the death of a partner. By his will, testator left the residue of his estate to his widow for life with the right to enjoy the income, rents, and profits, and with remainder over to certain of his relatives. Nothing was said in the will about retaining investments, and, in fact, no powers of investment or reinvestment are mentioned. The widow lived for an additional twenty-five years after testator's death, and the suit resulted from an accounting filed by her executors, with exceptions thereto filed by her devisee and by the remainderman under testator's will. By that time, all the parties who had any knowledge of the operation of the firm were dead, and all the books of the firm except one ledger had been destroyed. The widow's accounts were in "a mess", and it was impossible to determine at the time of the controversy what part of

the gross sum she received from the surviving partner represented the initial investment and what part, if any, represented profits made subsequent to testator's death. The principal issue in the lawsuit was a controversy over the ownership of $40,000 in bonds, and it was with this issue that most of the proof and briefs of counsel were concerned. In addition, for the full twenty-five years subsequent to testator's death, the widow had treated the entire gross sum which she received from the partnership as principal, and had not, during her lifetime, claimed any part thereof as income. In this situation, the Surrogate held that the entire amount received from the partnership should be treated as principal or corpus. The Supreme Court, Appellate Division, affirmed the Surrogate's decision with a modification on another point not involved in this case, and the decision of the Appellate Division, as modified, was affirmed by the Court of Appeals of New York without opinion.

The latest New York case in point is In re Prince's Will, 238 App. Div. 855, 262 N. Y. S. 785 decided in 1931. This case involved a state of facts almost identical with the ones involved in the case at bar, except that the testator in the Prince case specifically authorized his executors and trustees to continue any business in which he was engaged at the time of his death, either as a partner or as an individual. The partnership agreement provided that in the event of the death of a partner, the business might be continued by the surviving partners, at the option of the surviving senior partner, for a period not to exceed six months from the first day of the month next succeeding the death of the deceased. The agreement thus provided for the liquidation of the partnership upon the expiration of six months. At the testator's

death, the surviving senior partner elected to continue the business until the end of the year, after which time the testator's interest was remitted to the executors. Of the funds received by the executors, part represented interest on his capital account, part represented post-death profits, and the balance represented the return of the liquidated value of testator's assets. The Appellate Division of the Supreme Court of New York, reversing the Surrogate's Court, 141 Misc. 600, 252 N. Y. S. 908, held that the interest on capital and post-death profits were income and became the property of the life tenant, testator's widow. Although the testator's will expressly authorized his executors to continue his investment in this partnership, nothing in the Court's opinion, nor in the record of the case, indicates that the executors and trustees consented to the continuation of testator's investment in the partnership, and the continuation of such investment apparently depended solely on the election of the surviving senior partner. The Court held that the post-death profits were income and refused to follow the case of In re Miller, 199 N. Y. 564, 93 N. E. 1124, or the Massachusetts case of Mudge v. Parker, 139 Mass. 153, 29 N. E. 543.

In this review of the situation, we think the New York cases are not in conflict with the position taken by the executors and trustees and the life tenant beneficiary of income, Mrs. Watson K. Blair, in the instant case, nor with the result which we have reached in this opinion.

We come now to a consideration of the Tennessee cases, which, although not directly in point on the specific question involved in the instant case, do however, in our opinion, clearly point the way and indicate the result

460

which should be reached by this Court in deciding the controversy here involved.

■ At the outset, we must remember that we are here called upon to construe the will of Alexander B. McFadden, deceased. The cardinal rule in such constructions is that intention of the testator must prevail. As stated in Phillips' Pritchard Law of Wills and Administration of Estates at Section 384, the rule of construction is as follows:

"In construing a will, the object of the courts is to ascertain the intention of the testator as expressed in the instrument; and the first and most general rule of construction is that the intention which the will itself, either expressly or by implication, declares, shall prevail and be given effect. To this rule, all others, except those founded upon public policy and the necessity of sustaining established principles of law, are not only subordinate but auxiliary."

■ Such being the rule, ordinarily, extrinsic evidence is not admissible for the purpose of showing the intention of the testator. On the contrary such intention must be gathered from the four corners of the will, itself. One exception to this rule, however, is that extrinsic evidence may be looked to to ascertain the state of facts under which the will was made. As stated in Phillips' Pritchard Law of Wills and Administration of Estates, Sec. 409, this rule or exception is as follows:

"The rule that the intention of the testator must be collected from the will itself and not elsewhere, does not forbid a reference to the state of facts

under which the will was made. The judicial expositor should place himself as fully as possible in the situation of the person whose language he has to interpret, and guided by the light thus thrown on the testamentary scheme, he may find himself justified in departing from a strict construction of the testator's language. Consequently, extrinsic evidence is admissible in every case of doubt, to show the situation and surroundings of the testator and his property, the number and condition of his family and his relations with its members, and such other facts as may have influenced him in the disposition of his property and as will enable the court to understand the meaning and application of the language he has adopted, but the testator's intention must ultimately be determined from the language of the instrument, read in the light of the testator's surroundings, and no proof, however conclusive in its nature, can be admitted with a view of setting up an intention not justified by the language of the writing itself.''

The application of the above quoted rule and exception thereto from Pritchard to the facts of the instant case is that Alexander B. McFadden, deceased, whose will is being construed, was also a signer of the partnership agreements of the firm of Geo. H. McFadden & Bro., and we must consider that he had the provisions of the articles of partnership in mind when he made his will. Not only was he signer of the particular articles of partnership which were in effect at the time of his death, but he had also been a signer of previous similar articles of partnership which affected the estate of former partners who had died. Such being the case, we cannot agree

with the holding of the learned Chancellor "That the provisions for the continuation and inclusion of the interest of the estate in the general and limited partnerships were merely for the purposes of an orderly liquidation of the interest of the deceased partner, and (that) the interest of the testator in this case, was for such purpose, so continued and included." Being familiar, as he was, with the long history of successful operation of the partnership business, the testator must be held to have provided for the continuation of his investment in the general partnership, with the idea of having his estate share in the profits which he, no doubt, expected would be realized, and which did, in fact, accrue.

We take up now the Tennessee cases which throw light on the controversy involved in the instant case.

In the early case of Henderson v. Vaulx, 18 Tenn. 30, the doctrine of apportionment as between life tenant and remainderman is considered. In this case, the Supreme Court said:

"It appears from numerous cases, to which it were useless to refer the learned counsel, because relied on by them and read on the trial, that where a specific bequest for life, with or without limitation in remainder, is made of wine, corn, hay, or other things whose use consist in being consumed, the first taker is entitled absolutely. But, when this bequest is residuary and not specific, then such chattels must be sold, and the interest only of the proceeds given to the first taker, and the principal is preserved for him in remainder. Accordingly, complainants insist that such property, if it remain on hand in this case, shall

be sold, and, if not, shall be accounted for." Henderson v. Vaulx, 18 Tenn. 30, 34.

In Hunt v. Watkins, 20 Tenn. 498, there was involved a devise by the testator of a life estate in all of his real estate, personal property and slaves, to his widow, with a remainder over to one Winbush. At the time of the testator's death, he owed a considerable amount in debts. Instead of selling personal property and slaves to pay these debts, the executor with the consent of the widow and life tenant, arranged with creditors of the testator for delay, and operated the farm, paying the creditors out of the profits of such operation. After several years the life tenant died. Her personal representative then sued the executor of the husband's estate and Winbush, the remainderman, seeking an accounting for funds which should have belonged to the life tenant, but which had been used in paying creditors of the testator. The court held that as both life tenant and remainderman would have shared in the payment of debts if property of the testator's estate had been sold for that purpose, the personal representative of the life tenant was entitled to a recovery of the equitable share of the life tenant which had been expended for payment of debts.

This case may be considered as an authority for the principal of apportionment as between life tenant and remainderman, where perishable, consummable, or expendable property is involved.

Woods v. Sullivan, 31 Tenn. 507, is another authority for the proposition that "Where perishable property is given to one for life, and remainder to another, it is the duty of the executor to sell the estate, and vest the fund; the interest of which, only, will belong to the person

entitled to the life estate, and when that shall fall, the entire fund is to go to the remainderman." The opinion makes an exception, however, "Where the will, indicates the intention of the testator, that the tenant for life should enjoy the property in specie,—no such sale can be made,—and the remainderman is entitled only to such part of the property, originally given, as remains after the life shall fall."

In Forsey v. Luton, 39 Tenn. 183, the testator devised to his widow an estate for life in land, slaves, and other personal property. It was held that "The remaindermen are only entitled to such part of the property originally given as remained after the death of the tenant for life. If the tenant for life has wasted or consumed any part of the chattels to unauthorized uses, her estate will be liable for the amount so wasted or converted. But if it were consumed in the use intended to be made of it, or perished by time, or death of animals, or wear and tear of furniture and farming tools, the rights of the remaindermen are defeated, and they are entitled to nothing except what remained of the original stock."

In the case of Vancil v. Evans, 44 Tenn. 340, so far as same is applicable to the instant case, the rule is stated in the Second Headnote as follows:

"Perishable Property. Life Estate In, With Remainder Over. Executors' Duty. As a general rule, where perishable property is given to one for life— the remainder to another—the executor should sell the estate and vest the fund; the interest of which will go to the tenant for life, and at the falling in of the life estate, the entire fund will go to the remainderman. But, if the intention of the testator should

be that the tenant for life should enjoy the property in specie, then no sale should be made. The remainderman would be entitled to such part of the original property given, after the life estate shall fail.''

Fraker v. Fraker, 65 Tenn. 350, is another authority to the same effect. In this case, the Supreme Court said:

"It is settled by repeated decisions in this state that, in general, when perishable property is given to one for life, such as the produce of a farm, horses, cattle, etc., with the remainder to another, it is the duty of the executor to sell the property and vest the fund, the interest of which only will belong to the person entitled to the life estate, and when that shall fall in, the entire fund is to go to the remainderman. See Woods v. Sullivan, 1 Swan 506 [507]; Forsey and Wife v. Luton, 2 Head [183], 185, 6, 7. Yet it is equally well settled, that where the will indicates the intention of the testator that the tenant for life shall enjoy the property in specie, no such sale can be made, and the remainderman is entitled only to such part of the property originally given, as may remain after the life shall fail.''

It will be observed that a rule may be deduced from these earlier Tennessee cases, referred to above, that in the absence of an expressed intention by the testator to the contrary, where a life estate is granted in perishable or consummable property, such property must be converted and invested. Later cases, however, hold that this rule is not favored in Tennessee, and that slight indications will take the case out of this rule. As was said by Mr. Chief Justice Green, speaking for the

Supreme Court in Leach v. McCreary, 183 Tenn. 128, 132, 191 S. W. (2d) 176, 178:

"All the authorities recognize as of proper application in such cases the general rule that the intention of the testator must control. A sale of property such as we are considering for reinvestment necessitates a conversion and a direction by the testator that the property shall not be sold operates to take a case out of the rule stated in Henderson v. Vaulx, supra. It is so recognized in that case and also in Vancil v. Evans, supra. An examination of the decisions leads to the conclusion that the rule requiring a conversion or apportionment of income is not favored and a slight indication that testator desired the life tenant or the trustee for the life tenant to hold the property operates likewise to defeat the application of the rule. Thus as said by the editor of a note, 77 A. L. R. 753, 774: 'Authorization of, or direction to, the trustees or executors to retain the property, or sell it at a designated time or at their discretion, or distribute the same at the conclusion of the tenancy for life, has, in many cases, been held to be indicative of an intention to preclude the operation of the general rule.' Reference is made for support of the foregoing to many cases too numerous to be here reviewed."

The controversy in Leach v. McCreary involved the distribution as between life tenant and remainderman of dividends from mining stock.

In this case, Mr. Chief Justice Green also said:

"The testator here was a bachelor and evidently his three nieces for whom he made such ample

provision were near and dear to him. The ultimate remaindermen were doubtless unborn at the time of the execution of this will, and testator obviously would have desired these nieces, rather than remote unborn relatives, to enjoy the fruits of his estate." Leach v. McCreary, 183 Tenn. 128, 136, 191 S. W. (2d) 176, 179.

■ The above quoted words of Chief Justice Green seem to us peculiarly applicable to the facts of the case at bar. In the instant case the ultimate remaindermen are unborn descendants of the testator, whereas the immediate life tenant beneficiary is the testator's widow who obviously was "near and dear to him." Evidently the learned Chancellor was influenced in his decision to the contrary by the circumstance that the executors and trustees under the testator's will had no discretion as to whether or not funds of the estate should be kept invested in the partnership. We think this is immaterial, and it is our opinion that direction by the testator to that effect in the articles of partnership signed by him is just as effectual as would have been a similar direction by him in his will. In addition the will does expressly authorize the executors and trustees "To retain in their discretion, without liability, any of my investments in the form in which they may be at the time of my decease." The fact that the testator had himself provided, by signing the articles of partnership, for retention of his investment in the partnership was binding on the executors and trustees and precluded a decision by them to the contrary. This, in our opinion, presents a stronger argument for allowance of the profits to the life tenant income beneficiary than would have been the case if the testator's

investment in the partnership had been continued by exercise of the discretion of the executors and trustees.

The case of Pritchitt v. Nashville Trust Co., 96 Tenn. 472, 36 S. W. 1064, 33 L. R. A. 856, involved a controversy between the life tenant under a will and the remainderman as to which was entitled to a stock dividend declared by a corporation, the Nashville Gas Light Co., which stock dividend was payable from earnings of the corporation. Our Supreme Court held that the life tenant was entitled to the stock dividend in question, and in so holding expressly repudiated the Massachusetts rule on the subject which is to the contrary, and in favor of the remainderman. By analogy, we think we should reject the Massachusetts rule relied upon by the learned Chancellor in deciding the instant case.

In Pritchitt v. Nashville Trust Co., the Supreme Court said:

"When property is given to one person for life, with remainder to another, the former is entitled to the use for the period limited, and the latter to the corpus after that time. Neither may encroach upon the right of the other. The life tenant may not diminish the corpus, nor the remainder-man the use; and what they may not do themselves others may not do for them. The life tenant may not be deprived of the use to augment the corpus, nor the remainderman of the corpus to augment the use. The right to the use of the property entitles the life tenant to its net income. As applied to land, it entitles him to the crops or rent; as applied to money or bonds, it entitles him to the interest; and as applied to corporate stock, it should upon the same reasoning,

entitle him to the net earnings. If the life tenant may not be deprived of crops or rents to make the land better, or of interest to enlarge the corpus of money or bonds, why should he be deprived of net earnings of corporate stock, covered by stock dividends, to augment the remainder estate? It does not seem to us a sufficient answer to say that the corporation in the latter case has seen fit, in the due exercise of its power, to capitalize such earnings, rather than pay them out in cash dividends. What has the capitalization of the earnings to do with their ownership as between life tenant and remainder-man, or how can the change of form affect the title of those persons? Can the corporation, after earnings have been made and ascertained, give them to one person by this procedure, or to another by that procedure? Certainly not. Though endowed with the largest discretion in the honest management of its business, and allowed, at pleasure, to convert its net earnings into capital stock through the medium of stock dividends, a corporation cannot by that act, in our opinion, turn any portion of those earnings from the life tenant to the remainder-man of original stock." Pritchitt v. Nashville Trust Co., 96 Tenn. 472, 477-478, 36 S. W. 1064, 1065-1066, 33 L. R. A. 856.

In this case the Supreme Court also said:

"Special words were not necessary to vest the life tenant in this case with a right to stock dividends. The general bequest had that effect. Special words would have been necessary to deprive her of them, just as special words would have been required to deprive her of income on realty devised." Pritchitt

v. Nashville Trust Co., 96 Tenn. 472, 479-480, 36 S. W. 1064, 1066, 33 L. R. A. 856.

In the instant case, we think special words in the testator's will would have been necessary to deprive the widow as life tenant income beneficiary of the profits made on the testator's investment in the partnership between the date of his death and the end of the partnership's fiscal year.

Pritchitt v. Nashville Trust Co., 96 Tenn. 472, 36 S. W. 1064, 33 L. R. A. 856, including its express repudiation of the Massachusetts rule in distribution of stock dividends, was expressly approved in the recent case of Nashville Trust Co. v. Tyne, 194 Tenn. 435, 250 S. W. (2d) 937, in an opinion written by Mr. Justice Gailor. In this case distribution of stock dividends was made according to the Pennsylvania rule, as distinguished from the Kentucky rule and the Massachusetts rule which had previously been repudiated.

As stated in the opinion, the three rules for distribution for stock dividends are as follows:

"There are three rules which have been announced by various Courts, to control the distribution of stock dividends between life tenants and remaindermen:

"(1) By the Massachusetts rule, the medium of payment controls and if the dividend is paid in stock, it is corpus, and if in cash, it is income.

"(2) By the Kentucky rule, the fact that the payment is a dividend, is controlling, and as such, it is declared to be income, whether payable in cash or stock.

"(3) By the Pennsylvania rule, the continuing integrity and preservation of the corpus of the trust estate is the controlling factor, and if the payment of the dividend, whether cash or stock, impairs the corpus, by so much as the corpus is impaired, the dividend is corpus, and the rest is income.

"There is a lengthy and complete annotation of the three rules with analysis of many cases in 130 A. L. R., at pages 492-591. It would needlessly prolong this opinion to repeat them here." Nashville Trust Co. v. Tyne, 194 Tenn. 435, 440, 250 S. W. (2d) 937, 939.

With reference to the rejection of the Massachusetts rule in Pritchitt v. Nashville Trust Co., Mr. Justice Gailor's opinion says:

"The Pritchitt case was cited and approved in In re Turner, 101 Tenn. 701, 50 S. W. 757, and American Nat. Bank [of Nashville] v. Embry, 181 Tenn. 392, 401, 181 S. W. (2d) 356. We hold that this rejection of the Massachusetts rule, as it was announced by Judge Caldwell in the Pritchitt case, supra, and as it has remained the law of this State since 1896, has become a rule of property, which, under the doctrine of stare decisis, if it be altered, must be altered by the Legislature, and not by this Court. Wilkins v. Chicago, St. L. & N. O. R. Co., 110 Tenn. 422, 455, 75 S. W. 1026; Ewell v. Sneed, 136 Tenn. 602, 626, 191 S. W. 131, 5 A. L. R. 303." Nashville Trust Co. v. Tyne, 194 Tenn. 435, 441, 250 S. W. (2d) 937, 939.

The case of American National Bank of Nashville v. Embry, 181 Tenn. 392, 181 S. W. (2d) 356, although not

exactly on all fours with the facts of the instant case, is so nearly like it, in principle, that we think it is authority for the conclusion reached in this opinion.

That case involved a "bill in equity by the American National Bank of Nashville, as executor and trustee of the estate of Clara C. Leickhardt, deceased, against John William Embry, to have a declaration of complainant's duties declared with regard to the disposition of income which accrued to the estate between the death of the testatrix and one year thereafter." The income in question was adjudged to be properly payable by the executor and trustee to the life tenant. In so ruling, the Supreme Court, speaking through Mr. Justice Gailor, said:

" 'The general rule is now well established that when property is devised in trust to pay the income to a person for life or for a limited time, he is entitled to either actual or equitable income from the date of the testator's death, unless the testator has indicated an intention that the enjoyment of income shall not begin until some later date.' 2 Perry on Trusts and Trustees (6th Ed.) 904, sec. 550n.

" 'Unless the testator has given an express or implied direction to the contrary; it is usually held that the income for the life *cestui* is intended to begin at the death of the settlor, and that the trustee should not add income received by the executor to the corpus of the trust.' 4 Bogert on Trusts and Trustees, sec. 811, p. 2342.

" 'It seems clear that the income so received is to be treated as income and not as principal. There is no good reason why the life beneficiary should not

be entitled to receive income accruing since the death of the testator, no reason why he should be without income during the period of administration in order that the principal should increase.' 2 Scott on Trusts, section 234.3.'' American Nat. Bank of Nashville v. Embry, 181 Tenn. 392, 397, 181 S. W. (2d) 356, 358.

If the income in the Embry case was held properly payable to the life tenant from the date of the testator's death, we see no reason why, by the same line of reasoning, the entire income of the estate in the instant case from the death of the testator, Alexander B. McFadden, should not be payable to the life income beneficiary, Mrs. Watson K. Blair, and we so rule.

The brief of the guardian ad litem is this case calls attention to the Uniform Principal and Income Act, Chap. 81 of the Public Acts of 1955, 35-701 to 35-715, Tenn. Code Ann. This Act obviously can have no application to the case at bar, because it was enacted after the litigation here involved was instigated. Section 17 of that Act expressly provides:

"Be it further enacted, That this Act shall take effect from and after its passage, the public welfare requiring it, and shall apply to all estates of tenants or remaindermen which became legally effective after that date."

The Act was approved by the Governor March 1, 1955. If this Act, however, may be looked to as fixing the public policy of the State of Tennessee, subsequent to its enactment, then Section 7 of said Act (Sec. 35-708, Tenn. Code Ann.) fixed the future public policy of the State

of Tennessee in accord with the result which we have reached in this opinion.

For the reasons hereinabove stated, we think the decree of the Chancellor must be reversed and a decree entered in this Court instructing the executors and trustees to pay to Mrs. Watson K. Blair, the immediate life income beneficiary, as income, the profits realized from the partnership between the date of testator's death and the end of the partnership's fiscal year.

The cause will be remanded to the Chancery Court of Shelby County, Tennessee, for such further and appropriate proceedings there, and in the Probate Court of Shelby County, as may be necessary and proper in the administration of the estate of Alexander B. McFadden, deceased, in accordance with this opinion. The costs of this proceeding may be paid by the executors and trustees as an expense of the administration of the estate.

Avery, P. J. (Western Section), and Carney, J., concur.