J. E. TUBB, EXR., *v.* M. J. FOWLER *et al.*

MARY J. FOWLER *et al. v.* J. E. TUBB, EXR.

and

J. E. SULLIVAN, *Admr., v.* EVIE FOWLER *et al.*

(*Nashville.* December Term, 1906.)

1. **WILLS.** Income on bank stock consists of dividends declared, and not of surplus and undivided profits.

A widow entitled, under her husband's will, to the income of bank stock for life or widowhood, is entitled only to the dividends declared on the stock, and is not entitled to reach or appropriate the proportional part of the surplus and undivided profits on the stock as "income" on said stock by a sale of the stock or otherwise except as dividends are declared. (*Post, pp.* 327-338, and especially 332-338.)

Cases cited and approved: Bank Tax Cases, 70 U. S., 573; Gibbons v. Mahon, 136 U. S., 549; Phelps v. Bank, 26 Conn., 269; Lockhart v. Van Alstyne, 31 Mich., 78; In re London, etc., Co., L. R., 5 Eq. Cas., 525.

Case cited and distinguished: Pritchett v. Trust Co., 96 Tenn. 472.

2. **SAME.** Remainder legatees named will take vested remainder interest upon testator's death, when.

Where a will gives the testator's widow the income from his estate for her life or widowhood, and directs upon her death that the property be converted into money and that the proceeds be distributed among certain named persons, such legatees took a vested remainder interest in testator's estate from his death. (*Post, pp.* 327-329, 338.)

3. **SAME.** Assignment of error by executor for beneficiaries who raise no question is more or less academic.

A decree of the court of chancery appeals pronounced in a suit brought by the executor and testamentary trustee for a construc-

Tubb v. Fowler.

tion of the will affords him the same protection as the decree of the supreme court where the parties beneficially interested are content and raise no question on the point presented by his assignment of error which thus becomes a question more or less academic. (*Post, p.* 338.)

4. **SAME.** Interest accruing before testator's death is not income for life tenant, when.

A widow entitled to the interest and income of her husband's estate under his will for life or widowhood is not entitled to interest accrued before his death upon securities held by him and collected by the executor. (*Post, pp.* 338, 339.)

FROM HUMPHREYS.

Appeal from the Chancery Court of Humphreys County.—J. W. STOUT, Chancellor.

J. E. TUBB, for Tubb.

JOHN F. SHANNON, for Fowler.

THOMAS F. BOWMAN, for Sullivan.

B. R. THOMAS, for minors.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

These cases were consolidated and heard together in the chancery court and in the court of chancery appeals.

The questions involved in the last two of these cases are necessarily raised and presented in that of *Tubb, Ex'r, v. Fowler et al.*, and they will be disposed of as if raised alone by the pleadings in that cause.

The bill of Tubb, executor, was filed for the purpose of having construed the fourth and fifth clauses of the will of his testator, G. M. Fowler, who died in June, 1900, leaving a considerable estate. After having made provision in its first, second, and third clauses for the payment of his debts and of certain legacies, the testator proceeded as follows:

"Fourth. After the payment of the above sums to the above-mentioned parties, I will, devise and bequeath to my beloved wife, Mary J. Fowler, all of my estate, both real and personal, in the county aforesaid and elsewhere, of which I shall die seized and possessed, or to which I shall be entitled at the time of my death, all of the right, title, interest, occupancy, and ownership and possession to be enjoyed by my said wife during her natural life, or widowhood, but only the rents and interest of said property, both real and personal, to be disposed of by her at will. My executor, hereinafter named, shall look after, see to, and aid in renting all of my real estate, and shall collect and pay over to my said wife all of the rents of said estate, no one to have any control of any of the income of my estate to the prejudice of my said wife; she having full power to dispose of the same at will. My executor, hereinafter named, shall also look after, see to, and help my wife to

take care of all my personal property, moneys, stocks, mortgages, notes, etc., and shall manage, invest, sell, and reinvest my personal property of every character for the benefit, best interest, and advantage of my beloved wife, in productive mortgages, stocks, bonds, notes, etc., shall hold net interest of said investments or income from said personal property, to be collected as it matures by my executor, hereinafter named, and by him paid over to my said wife, no one to have any control of said interest or income from said personal property to the prejudice of my said wife, she having full power to dispose of the same at will; it being my object to secure to her during her natural life, or widowhood, the use, benefits, enjoyment, and disposal at will of all said interest, or income, from said property, both real and personal, . . . and in the event my said wife shall again marry, I direct that she be set apart a dower out of my real estate, and the balance of my estate, both real and personal, to be converted as soon as practical into money, by my executor, and that she shall share equally in the same with my residuary legatees, to wit: A. Fowler, John Fowler, F. J. Fowler, Eliza Norman, S. M. Fowler, deceased, Minerva Stover, deceased, Martha Anne Phebus, Edward Teas — with this exception; that is, that John Fowler and Eliza Fowler shall have each $500 less than the others named.

"Fifth. After the death of my said wife, it is my will that my executor, hereinafter named, shall take full charge and complete possession and control of all my

property of every description, both real and personal, and advertise and sell the same to the highest bidder for cash, or on reasonable time, taking notes with provided (approved?) security. As soon as the proceeds of said sale . . . are realized, and the expense of the execution of this will have been paid, I will, devise and bequeath all the remaining portion of said proceeds of said sale . . . as follows, to wit: Into eight equal parts, except that John Fowler and Eliza Norman each receive $500 less than one-eighth. . . . A. Fowler one-eighth, S. M. Fowler, deceased, one-eighth, T. J. Fowler one-eighth, Minerva Stover, deceased, one-eighth, and Martha Ann Phebus, one-eighth, and Edward Teas one-eighth, and Eliza Norman, one-eighth, less five hundred dollars. . . . All of which shall by my executor, hereinafter named, be paid over to the parties aforesaid, or their legal representatives. . . .

"Sixth. I hereby nominate and appoint James E. Tubb executor of this my last will and testament."

The testator at the time of his death was a man about sixty-eight years of age. He had been married to Mary J. Fowler, who survives him as widow, for a great many years. The estate disposed of in this will had been accumulated by the thrift and economy of both the husband and the wife. The most harmonious relations existed btween them during their married life and up to the time of the testator's death. Two children had been born to them, but both had died in infancy. At the time

of the making of this instrument, as well as at the death of the testator, these parties were childless.

It is evident from the reading of the will that the main object of the testator's affection was his wife, and his primary purpose was to provide from the residuary estate an independent support for her during her widowhood, or, if this was not terminated by marriage, then until her death. To this end he devotes, after the payment of debts, the whole of his estate, real and personal. To effectuate this purpose, the management of the estate is committed by him to the complainant, Tubb, who is named in the will as executor, but upon whom many duties are imposed as testamentary trustee. To him is committed the management of the estate, and with a view to prudence in that regard, and to the end that the largest income consistent with security might be realized, the right "to manage, invest, sell and reinvest" the personal property of the testator was conferred upon him.

The will is crudely drawn, and has much of repetition in it still there is no difficulty in ascertaining the thought which was uppermost in the testator's mind in its execution, nor is there any obscurity in the manner of expressing this thought. For a number of years prior to his death, he had investments in certain banking institutions in the towns of Waverly and Clifton, in this State. Some of these investments existed at the time of his death and constituted a portion of the personal estate which came into the possession of his executor.

Among these properties were ten shares of stock in the People's Bank of Clifton, Tennessee, of the face value of $100 each. These are now held by complainant for the estate. Since the death of the testator, the complainant, acting under the authority of the will, invested $1,500 of money belonging to the estate in the purchase of that amount of stock in the Frst National Bank of Waverly, Tennessee, and has used $500 in the purchase of 10 shares, of the par value of $100 each, in the Citizens' Bank of Waverly, only fifty per cent. of which has been paid in. The stock in both of these last-named banks was taken out in his name as such. The stock in these banks has increased, since the executor became the owner, in value to an amount very much above par. That of the First National Bank of Waverly, according to the finding of the court of chancery appeals, is so desirable an investment, that its market value is $170 per share, which is about twenty per cent. above the book value of the stock. This bank has been, and is, paying from twelve to fourteen per cent. dividend annually over and above expenses, and has been, and is still, accumulating a reserve and surplus. While its capital stock is $35,000, the record shows that, notwithstanding the payment of the large annual dividend that has just been referred to, it has accumulated in its business a little over $17,000 in surplus and undivided profits. That was its condition on the 25th day of August, 1905, when the depositions in this case were taken.

The People's Bank at Clifton has a capital stock of

$25,000. The business of this bank has been extremely profitable. Though, as stated above, it has been paying an annual dividend of 10 per cent. yet on the 30th of June, 1905, it had accumulated in surplus and undivided profits the sum of $20,427.19.

The income received on these various stocks has been paid by the executor to Mrs. Fowler, the life tenant. Her claim, however, is that these dividends received by her do not represent her full interest in these shares of stock, and that she is entitled to receive that portion of the surplus and undivided profits held in these banks apportionable to these several shares, and, as there is no more practical way of reaching this interest, that these shares should be sold, and, when the money invested in them is returned to the corpus of the estate, that the remainder should be paid over to her as life tenant. This claim is resisted by the executor, who contends that Mrs. Fowler has received her full interest, when the dividends declared by these several banks on these shares of stock have been paid over to her, and that, until these banks have taken some affirmative action in the way of dividing this surplus and these profits among the shareholders, they remain the property of the corporation.

That Mrs. Fowler is entitled alone to the income of the estate of her deceased husband, including these shares, we think is clear from the will. As to the realty, the testator provided as follows: That "my executor, hereafter named, shall look after, see to, and aid in

renting all of my real estate, and shall collect and pay over to my said wife all of the rents on said real estate, no one to have control of any of the income of my estate to the prejudice of my said wife"—and, as to the personalty, that "he shall manage, invest, sell, and reinvest my personal property of every character for the benefit, best interest, and advantage of my beloved wife, in productive mortgages, stocks, bonds, notes, etc., the whole net interest of said investment, or income, from said personal property to be collected as it matures by my executor and by him paid over to my wife, no one to have any control of said interest or income . . . to the prejudice of my said wife."

The question then raised is: Does the surplus and undivided profits in the several banks constitute in any sense "income," within the sense of the law, or intent of the testator, as manifested in the will?

Upon authority, we are satisfied that they form no part of the income of these banks. As is said by the supreme court of Connecticut in *Phelps* v. *Farmers', etc., Bank*, 26 Conn., 269, in speaking of undivided profits: "Nothing can be income to the stockholder that has not been made so by the act of the corporation. The profits of a bank, no matter when made, until separated from the stock by declaring a dividend, are mere increment and augmentation of the stock. They are properly stock themselves, composing a part of the stock of the bank, and will pass with the stock under that name, either by

contract or by levy of execution." And this is equally true as to undivided surplus.

It is beyond controversy that the title of the corporate property is in the corporation and not in the shareholders. The corporation, within its charter, is the owner of its real estate and improvements, of its stocks, bonds, money, and none the less of its accumulated surplus and undivided profits. It may sell its real estate or its stocks and bonds, or loan out its money, and as long as its agents are acting in good faith a shareholder cannot gainsay its action. This title and power of control equally extends to the management of its surplus and undivided profits. Until the directors or shareholders, acting as a body, have determined otherwise, the title and control of these funds are absolutely in and with the corporation.

The interest of the shareholders consists in the right to a proportionate share of the surplus and profits, whenever dividends are declared by the corporation during its existence, and to a like proportion of the property remaining upon the dissolution of the corporation after the payment of debts. The text-writers are of one mind on this proposition. 1 Cook on Corporations, section 11; 2 Clark & Marshall, Pri. Cor., section 517; Morawetz on Corporations, section 344.

Mr. Beach, in volume 2, section 602, of his work on Private Corporations, states the rule in these words: "The stockholder has no inchoate or other legal right to the earnings or profits of the company until the divi-

dends have been declared. . . . The individual members of a corporation are no doubt interested in one sense in the property of the corporation as they may derive individual benefit (or otherwise) from its increase or loss; but in no legal sense are the individual members the owners.".

Until the dividend is declared by the proper authority, it is a mere potentiality, something which may come into existence; but the obligation on the part of the corporation to declare it cannot be treated as the dividend or income itself. *Lockhart* v. *Van Alstyne*, 31 Mich., 78, 18 Am. Rep., 156; *In re London, etc., Co.*, L. R., 5 Equity Cases, 525; Cyc. p. 546, col. 10; 2 Beach on Corporations, section 598.

The courts of last resort are in absolute accord with the text-writers, to whom reference has been made. In the opinion of the supreme court of the United States in the *Bank Tax Cases*, 70 U. S. (3 Wall.), 573, 18 L. Ed., 229, this proposition was announced as so generally accepted that it needed no citation of authorities. Speaking through Justice Nelson, the court said: "That a corporation was the legal owner of all its property, real and personal, with the right to deal with it within the powers conferred by its charter, as absolutely as an individual, is familiar law, and will be found in every work that may be opened on the subject of Corporations."

It is upon the basis of this conceded ownership that the courts have uniformly held that a shareholder has

no legal title to any of its property until the corporation sees proper to part with its dominion over it, by making a division of it in the form of a dividend. In *Gibbons* v. *Mahon*, 136 U. S., 549, 10 Sup. Ct., 1059, 34 L. Ed., 525, it is said: "Money earned by a corporation remains the property of the corporation, and does not become the property of the stockholders, unless and until it is distributed among them by the corporation. . . . Acting in good faith and for the best interest of all concerned, the corporation may distribute its earnings at once to the stockholders as income, or it may reserve part of its earnings of a prosperous year to make up for the possible lack of profits in future years, or it may retain a portion of its earnings and allow them to accumulate, and then invest them in its own works and plant, so as to secure and increase the permanent value of its property. Which of these courses shall be pursued is to be determined by the directors, with due regard to the condition of the company's property and affairs as a whole; and, unless in case of fraud or bad faith on their part, their discretion in this respect cannot be controlled by the courts. . . ."

Upon these authorities we have no hesitancy in holding that as a matter of law the surplus and undivided profits of the banks in question were not "income," and until dividends shall be declared by these banks as solvent concerns the question discussed and decided in *Pritchett* v. *Nashville Trust Co.*, 96 Tenn., 472, 36 S. W., 1064, 33 L. R. A., 856, could not arise. Until that

time there is no occasion for controversy between the life tenant and remaindermen.

That the testator might have treated the mere possibility of the dividend out of these funds as the dividend itself, and given it to the life tenant, is beyond question. Then he would have had a case where the only practical way of affording relief to the life tenant would be by directing a sale of the shares, and, after a reimbursement of the corpus to the extent of the capital employed in their purchase, requiring the excess to be paid over to the life tenant. But we see nothing in the will which discloses such a purpose upon his part. He, as has been intimated, was to a degree a man of affairs. He was an owner of, if not a dealer in, negotiable securities. These securities constituted a considerable part of his estate. He had been an investor in bank stocks, and died the owner of such property. As an investor in these stocks, it is fair to assume he had some familiarity with the method of banking institutions. We are satisfied that, when he directed his executor and testamentary trustee to invest in stocks, he had in his mind shares in such institutions, and that, when he provided that his wife should receive the income from his personal property, in so far as such stocks were concerned, he had in his mind only the dividends declared upon these stocks.

This view relieves us of the necessity of examining the authorities relied upon by the solicitor of the life tenant, as none of these go to the point of the interest

118 Tenn—22

of a life tenant in the surplus and profits of these institutions before their ownership is determined by a declaration of a dividend. So, placing our conclusion upon the propositions stated above, we think, on the point in question, the assignment of error to the action of the court of chancery appeals is well taken, and its decree in regard to these funds must be reversed.

We see no error in the action of that court in holding that the parties named in this will as residuary legatees took a vested remainder interest in the testator's estate from his death. No one of these remaindermen has raised the question which the complainant, Tubb, seeks to present on his assignment of error addressed to this holding. His duty as a testamentary trustee ends with the marriage of Mrs. Fowler, should that occur, or, in the event it does not, upon her death. His duty, then is simply one of distribution. The decree of the court of chancery appeals settling this question would as well afford him protection as the decree of this court affirming the action of that court. So the question he now presents to us is more or less academic. We will not, therefore, enter upon an examination of the authorities upon which he relies for a reversal of the decree in this regard, but content ourselves with saying that we are entirely satisfied that the court reached a right conclusion in disposing of that question.

We are also satisfied with the court's action with regard to the small matters of interest which are raised by the complainant.

Tubb v. Fowler.

There was no error in the action of the court of chancery appeals in declining to hold that the life tenant was entitled to certain items of interest which had accumulated, before the death of the testator, upon certain securities held by him, which were collected by the executor after the death of his testate. Save as above indicated, the decree of the court of chancery appeals is affirmed.