**NATIONAL GEOGRAPHIC SOCIETY, Appellant,**

v.

**Eugenia Floride WILLIAMS, Trustee, Under the Will of David Hitt Williams et al., Appellees.**

Court of Appeals of Tennessee, Western Section.

Nov. 28, 1972.

Certiorari Denied by Supreme Court Aug. 6, 1973.

S. Frank Fowler, of Fowler, Rowntree, Fowler & Robertson, Knoxville, Tenn., Paul L. O'Brien, of Hanson, O'Brien, Birney, Stickle & Butler, Washington, D. C., for appellant.

Fred H. Cagle, Jr., M. W. Egerton, Jr., Knoxville, Tenn., for appellees.

NEARN, Judge.

The main issue presented by this appeal is whether stock dividends representing corporate net earning received by a Trust created prior to March 1, 1955, are to be treated as income or *corpus.*

Appellant, National Geographic Society, is one of two equal contingent remaindermen beneficiaries of a testamentary Trust established by the Will of David Hitt Williams who died in 1929. Appellee, Eugenia Floride Williams is the Trustee of said Trust as well as the life income beneficiary thereof. James Patrick Roddy, Jr. is the other contingent remainderman. Miss Williams became the Trustee of the present Trust in 1931.

National Geographic Society brought suit for a Declaratory Judgment in the Chancery Court of Knox County against Eugenia Floride Williams as Trustee, and individually as the life income beneficiary, and also against James Patrick Roddy, Jr. The suit sought a declaration as to whether certain stock dividends and the profit from the sale of other stocks belong to Miss Williams as the life income beneficiary or belong in the *corpus* of the Trust.

The Chancellor held that the stock dividends and the profits from sale of other stock went to Miss Williams as the life income beneficiary.

The items held by the Trust and the subject of this controversy are (a) stock dividend of Roddy Manufacturing Companey, (b) stock dividend of the Park National Bank, and (c) a profit from the sale of Southern States Portland Cement Company stock.

All stock dividends, although declared many years ago, and profits from sale of stock are still held in trust and their distribution or retention await the final outcome of this suit.

The Will of David Hitt Williams, father of appellee, Eugenia Floride Williams, established the testamentary Trust from the testator's residuary estate, which was substantial in value. The first named Trustee was to serve until Miss Williams attained the age of thirty (30) years. During this period the "entire net income" from the Trust was to be paid to her. Upon Miss Williams reaching thirty (30) years of age, the first named Trustee was to turn over to Miss Williams as Trustee:

"- - - my entire estate, in trust for the use and purpose following: I give and bequeath to her the entire income and profits therefrom for and during her natural life. At her death the said estate to go to any child or children that may be born to her, share and share alike, to such child, or children, surviving her.

Should my said daughter die, leaving no lawful issue surviving her, then, and in that event, it is my will and I so direct that, my said estate be divided and distributed as heretofore set forth in Clause Nine (9) of this my Will."

Clause nine is the one that provided for an equal division between the two remaindermen.

Miss Williams has been once married and divorced. She is now approximately seventy-two (72) years of age and no children have ever been born to her.

Prior to any stock dividend being declared by Roddy Manufacturing Company, the Trust held 386 shares of that corporation. In 1951 Roddy Manufacturing Company declared a 400% stock dividend. The Trust surrendered the 386 shares and received in place thereof 1930 shares of the Roddy Manufacturing Company. The declaring corporation, at the time of the issuance of the stock dividend transferred $400,000.00 from its earned surplus account to its fixed capital account, which transfer increased the fixed capital account from $100,000.00 to $500,000.00.

In November 1956, May 1964 and December 1968, Park National Bank declared stock dividends which, *in toto,* increased the 157 shares held by the Trust to 470 shares. The Bank also transferred funds from its earned surplus account to its capital account rather than pay out a cash dividend on the earned surplus.

The stock dividends of each corporation were declared from earnings created subsequent to the death of the settlor, David Hitt Williams.

Seventeen Assignments of Error have been filed with this Court, but the majority can be answered by a determination of whether the said stock dividends are to be considered income or *corpus.*

■ Under the Uniform Principal and Income Act, Chapter 81, Acts 1955, codified as T.C.A. 35–701 through 35–715, it is provided that stock dividends on stocks held in trust are to be deemed principal. Section 35–706(1) T.C.A. is as follows:

"Dividends—Subscription rights—Liquidation — Corporate reorganization. — 1. All Dividends on shares of a corporation forming a part of the principal which are payable in the shares of the corporation shall be deemed principal."

Section 35–715 T.C.A. provides:

"Construction.—This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and shall apply to all estates of tenants or remaindermen which become legally effective after March 1, 1955. [Acts 1955, ch. 81, §§ 14, 17.]"

It is evident from a reading of the Act that it is prospective only in its operation. Also, see McFadden v. Blair (1956 W.S.) 42 Tenn.App. 434, 304 S.W.2d 93. However, it is the position of the Society that the legal principal of the foregoing Statute, i. e., in regard to trusts, stock dividends are principal and not income, was the announced case law of this State prior to the Act of 1955. The Society transported itself to this legal position via the case of Tubb v. Fowler (1906) 118 Tenn. 325, 99 S.W. 988, which will hereafter be discussed.

In our opinion, the principal issue involved will be determined by our interpretation, construction or correlation of three Tennessee Supreme Court cases on the subject. These cases are: Pritchitt v. Nashville Trust Co. (1896) 96 Tenn. 472, 36 S.W. 1064, Nashville Trust Co. v. Tyne (1952) 194 Tenn. 435, 250 S.W.2d 937, Tubb v. Fowler, supra.

In Pritchitt, supra, the Tennessee Supreme Court first considered the problem of determining the proper allocation of stock dividends issued by a corporation when its stock is held in trust and claims are made to the stock dividends by both the life income beneficiary and the remainderman. Justice Caldwell, speaking for the Court in the Pritchitt case stated the issues to be determined as follows:

"The precise question is this: Which of the two, the life tenant or the remainder-man of corporate stock bequeathed,

is the ultimate owner of stock dividends, declared from net earnings, made after respective rights of the two persons attached to the original stock? Do such dividends belong absolutely to the life tenant as income, or do they form a part of the *corpus,* and pass to the remainder-man as such?"

In answering the posed questions, Justice Caldwell discussed and considered the three general rules which govern the allocation of stock dividends in such situations. These rules are usually referred to as the Massachusetts rule, the Kentucky rule and the Pennsylvania rule.

The case of Minot v. Paine, 99 Mass. 101, is the basis of the Massachusetts rule, which rule, by Statute, is now the rule of this State governing trusts created after March 1, 1955. T.C.A. 35–701 et seq. Simply stated, the Massachusetts rule requires that cash dividends, however large, be regarded as income, and stock dividends, however made, as capital. The Massachusetts rule was rejected by the Court in Pritchitt.

The Kentucky rule had its origin in Hite v. Hite, 93 Ky. 257, 20 S.W. 778; S.C., 40 Am.St.Rep. 189. The Kentucky rule is that where a dividend, although declared in stock, is based upon the earnings of the company, it is in reality, whether called by one name or another, income and not capital. Further, according to the Kentucky rule, when the earnings, which are the basis of the stock dividend, accrued prior to the creation of the trust but are not declared as dividends until subsequent to the creation of the trust, there will be no apportionment of the dividend between the settlor or *corpus* and the income beneficiary. The earnings must be considered as accruing in their entirety as of the date of declaration of the dividend. Hence, if declared after the trust was created the stock dividend goes to the income beneficiary in its entirety regardless of when the earnings were in fact earned. This rule was also rejected in Pritchitt.

The Pennsylvania rule is based on the Pennsylvania Court's holding in the case of Earp's Appeal, 28 Pa. 368. According to the Pennsylvania rule, stock dividends which arise out of net earnings of a corporation will be allocated to those who would ordinarily be entitled to receive those net earnings had such earnings been represented by a cash payment. Further, if any part of such stock dividends do not arise out of net earnings or were earned by the settlor prior to the establishment of the trust, the dividends will be apportioned to the equitable owners thereof. Therefore, if a portion of the net earnings which are the basis of the stock dividends were earned during the settlor's lifetime, such portion of the stock dividend will be allocated to *corpus,* and the remainder, if earned subsequent to the settlor's death, will be allocated to the income beneficiary. As pointed out by Justice Caldwell in Pritchitt, the difference between the Pennsylvania rule and the Kentucky rule is the matter of apportionment. The Pennsylvania rule allows equitable apportionment and the Kentucky rule does not. The Pritchitt Court stated that it adopted the Pennsylvania rule.

The basic fact of the Pritchitt case as found by that Court was that the stock dividends then in question arose out of corporate net earnings made after the death of the testator.

In deciding the issues in favor of the income beneficiary the Court stated:

"The life tenant of corporate stock is entitled to the undiminished benefit of its net earnings in any and every contingency; less than that would not allow him the full use of the life estate. He has at least an inchoate interest and title in and to such earnings from the inception of his estate, and that interest and title reaches full maturity and becomes absolute when the corporation sees fit, in the course of its affairs, to cover those earnings by dividends, in whatever form. If the dividends be paid in cash, he takes that; and if in stock, he takes that."

It must be borne in mind in attempting to relate the Pritchitt case with later cases that Pritchitt did *not* involve an apportionment.

Next, we come to the case of Tubb v. Fowler, supra, which is strongly relied upon by the Society. It is the argument of the Society that the Supreme Court in Tubb v. Fowler effectively overruled the Pritchitt case and by implication at the least, adopted the Massachusetts rule. We are of the opinion that the Tubb case did not alter the decision made in Pritchitt. In the Tubb case, the trustee held certain bank shares which had greatly increased in value over the years. The banks were paying annual cash dividends of about twenty (20) per cent to the trustee who in turn paid same to the life income beneficiary. It was the position of the life income beneficiary that the increase in value of the stock represented profit or income and that the stocks should be sold and that the undeclared profit or income therefrom be paid to her. The case did *not* involve any stock dividends. It was simply an attempt by the life income beneficiary to obtain the enhanced value of the stock by means of a forced sale. As we view the Tubb case, the Court merely elaborated upon that which was touched upon in Pritchitt. In Pritchitt it was stated that in the matter of the manner or amount of a cash or stock dividend "a corporation, so long as it acts in good faith and within its charter powers, is rightfully allowed to decide such matters for itself without let of hindrance from any source." It was further stated in Pritchitt that even though corporations had the right and power as stated in the foregoing quotation as between itself and its stockholders, such right and power in that relationship had nothing to do with the relationship between a life tenant and remainderman and that no matter in what form a corporation declared a dividend, the corporate form of declaration could not alter the rights between the remainderman and an income beneficiary. In the Tubb opinion the Court at length restated the right of a corporation to run its own affairs and declare dividends in whatever form it desired, or not declare dividends. Both Tubb and Pritchitt hold that there are two separate rights involved, that is, those between the stockholder and the corporation, and those between an income beneficiary and remainderman. While either an income beneficiary or a remainderman might have a claim against a corporation for a bad faith failure to declare dividends, there is no possible conflict between the income beneficiary and the remainderman unless and until a dividend in some form is declared. The Tubb Court denied the claim of the income beneficiary and stated:

" * * * we have no hesitancy in holding that as a matter of law the surplus and undivided profits (not declared as a dividend in any form) of the banks in question were not 'income,' and until dividends shall be declared by these banks as solvent concerns the question discussed and decided in Pritchitt v. Nashville Trust Co., 96 Tenn. 472, 36 S.W. 1064, 33 L.R.A. 856, could not arise. Until that time there is no occasion for controversy between the life tenant and remaindermen." (parenthetical phrase ours)

We do not consider the Tubb case as overruling the Pritchitt case, much less an announcement that Tennessee would thereafter be governed by the Massachusetts rule.

In our opinion, the case of Nashville Trust Co. v. Tyne, supra, does not reaffirm in all respects the Pritchitt case. However, Tyne did reaffirm the rejection of the Massachusetts rule and by that reaffirmation the contention of the Society that, as a matter of law, stock dividends should be treated as *corpus* or capital, must be rejected by this Court.

On the subject of the rejection of the Massachusetts rule by Pritchitt, Justice

Gailor, speaking for the Tyne Court, held as follows:

"We hold that this rejection of the Massachusetts rule, as it was announced by Judge Caldwell in the Pritchitt case, supra, and as it has remained the law of this State since 1896, has become a rule of property, which, under the doctrine of *stare decisis,* if it be altered, must be altered by the Legislature, and not by this Court."

In the Tyne case, the Court did touch on the Kentucky rule, but pointedly commented that the Kentucky rule was not before it for consideration, as, by stipulation of the parties, its consideration had been precluded.

On the subject of the adoption of the Pennsylvania rule by the Pritchitt Court, Justice Gailor commented that since the question of apportionment was not presented in Pritchitt:

" * * * it was unnecessary for a decision in the Pritchitt case, to choose between the Pennsylvania and the Kentucky rules, and any inference from Judge Caldwell's lengthy quotation from, and consideration of Earp's Appeal, 28 Pa. 368, which is a basic authority for the Pennsylvania rule, is valuable merely as the opinion of that distinguished and learned Judge, of what the law in Tennessee should be."

It is our understanding that the rule established by Tyne is that when the question of apportionment is not presented, that is, the stock dividends arise out of net earnings earned after the death of the settlor or the establishment of the trust, such stock dividends do not form a part of the *corpus.* Until such time as a case involving apportionment arises, this rule we suppose should be referred to as the Tyne rule, no other name having been given it.

In the instant case the stock dividends arose out of net earnings of the corporation. Also, these earnings were accumulated subsequent to the death of the settlor.

These facts being true, the question of apportionment is not presented. Therefore, under the authority of both Pritchitt and Tyne, we hold that the disputed stock dividends in this case should be allocated to the income beneficiary unless the testator's intent is clearly shown to be to the contrary.

It must be evident by this time that we are not of the opinion that the will and evidence adduced in the cause show an intent on the part of the testator that the subject stock dividends be treated as *corpus.* Had we held a contrary view, this opinion would have been considerably shorter as authorities need not be cited for the proposition that in the interpretation of wills, the cardinal rule is to follow the intent of the testator and all other rules are subservient thereto. The settlor made no mention in the Will about stock dividends and there is no positive proof of intent outside the instrument itself. From the *corpus,* the settlor gave to Miss Williams the "entire income and profits". In the Pritchitt case, Justice Caldwell stated:

"Special words were not necessary to vest the life tenant in this case with a right to stock dividends. The general bequest had that effect. Special words would have been necessary to deprive her of them, just as special words would have been required to deprive her of income on realty devised."

These same words were cited with approval by Justice Gailor in the Tyne case. There are no special words in the instrument in question which could be construed to deprive Miss Williams of the stock dividends.

Therefore, we hold that the Chancellor was correct in holding that the subject stock dividends were income and not *corpus.* All Assignments of Error directed to that holding by the Chancellor are respectfully overruled.

We now turn to the matter of the profits from the sale of the Southern

States Portland Cement Company stock. In 1954, Miss Williams with the approval of the Society, sold 184 shares of stock in the said cement company. It is undisputed that from this sale a profit of approximately $43,000.00 was made. The Chancellor held that this profit was the property of Miss Williams, individually as the life income beneficiary.

The principal argument of the Society is that Miss Williams is, as income beneficiary, estopped to claim these profits. The argument for estoppel is based on the position Miss Williams took in 1930 in legal proceeding she instituted shortly after she became Trustee. Also, certain correspondence between counsel for Miss Williams and counsel for the Society, written at the time of the cement stock sale, is relied upon by the Society as basis for the application of the doctrine of estoppel.

In February, 1930, Miss Williams (then ·Mrs. Gordon Chandler) filed a Bill in the Chancery Court of Knox County wherein she contended that as Trustee she had the power to sell personal property for the purpose of reinvestment and prayed that the Chancellor declare that right. The Chancellor was not required to define the powers of the Trustee as the litigation ended in a consent decree by the parties which, *inter alia,* provided:

"If at any time she as trustee shall conclude that any stocks * * * should be sold for reinvestment she shall notify the defendant, National Geographic Society in·writing and if it agrees in writing thereto, then she may make the sale and reinvestment without further order of the Court."

▉ It is the instance of the Society that the consent decree which provided for the sale of personal property for reinvestment settled the matter and Miss Williams cannot now take a different stand and claim profits from a sale for reinvestment. Gibson's Suits in Chancery and the line of cases which follow the statements contained therein, to the effect that a consent decree is a solemn contract and binding upon the parties, are cited to us to support the position of the Society. We certainly agree with the statements made by Chancellor Gibson on this point and concur in the cases that have followed that line of reasoning. However, binding though a consent decree may be, it is only binding as to the matters contained therein. The 1930 litigation was not over any profits, it was concerned with the Trustee's right of sale. The consent decree does not mention profits from sale. It is an agreement whereby property can be sold and reinvestment made. There is no agreement between the parties concerning the issue of a profit from sale. This being true, the consent decree is not *res adjudicata* nor does the proceeding act as a judicial estoppel on the general issue of profits.

About the time of the sale of the cement company stock, certain correspondence took place between counsel for the Society and counsel for Miss Williams. It seems that there was an offer from the Marquette Cement Company to purchase the Southern States Portland Cement Company stock. Pursuant to the old consent decree, the approval of the Society was sought for that sale. Evidently, a conversation about the matter took place between counsel for Miss Williams and counsel for the Society. The gist of the agreement or conversation was reduced to letter form, and the first of four important letters represents to be an understanding of the agreement or conversation. The first letter is dated December 18, 1953, from counsel for the Society to counsel for Miss Williams. The pertinent part is as follows:

"This will confirm my statement to you yesterday that National Geographic Society, as residuary legatee under the will of David Hitt Williams, deceased, agrees with the Trustee that it would be prudent for the Trustee to accept the offer of Marquette Cement Manufacturing Company for the purchase of 184 shares of the Southern States Portland Cement

Company, now held as a part of the Trust Estate, at $420.53 per share, *the proceeds of such sale to become a part of the corpus of the Trust* and to be reinvested by the Trustee for the Trust Estate as market conditions warrant, and subject to the approval of the National Geographic Society. *The net return to the corpus will be the net proceeds of the sale* less the capital gains tax payable by the Trust.

The price of $420.53 per share, as we understand it, is the price offered less commissions, attorneys' fees, auditing fees and other expenses properly chargeable in a sale of this kind, which it is estimated will amount to approximately $30.00 per share.

Will you be good enough to inform me if this is in accordance with your understanding of our conversation, and if so, will you also have the Trustee confirm the understanding?" (emphasis supplied)

On December 22, 1953, counsel for Miss Williams replied as follows:

"Reference is made to your letter to me of December 18, *which confirms our conversation* of December 17.

Miss Eugenia Floride Williams, as Trustee, has signed the agreement which was made by the other stockholders of Southern States Portland Cement Company.

As soon as she has been paid the amount due her as Trustee, pursuant to the contract, I shall advise you.

When you were here I stated that I thought that she would prefer to reinvest the proceeds from the sale of the stock in United States Government Bonds." (emphasis supplied)

On January 27, 1954, counsel for Miss Williams again wrote associate counsel for the Society as follows:

"Reference is made to my letter of December 22, 1953, to Mr. Elisha Hanson, Attorney, National Geographic Society, in which I stated:

"When you were here I stated that I thought that she would prefer to reinvest the proceeds from the sale of the stock in United States Government Bonds."

In the Decree dated September 19, 1933, which was entered in the case of Eugenia Williams Chandler v. James Patrick Roddy et al., being No. 23,864 upon the Rule Docket of the Chancery Court of Knox County, Tennessee, (Minute Book 108, page 125) it is stated:

"If at any time she as Trustee shall conclude that any stocks or any portion of the real estate should be sold for reinvestment, she shall notify the defendant, National Geographic Society, in writing and if it agrees in writing thereto, then she may make the sale and reinvestment without further order of the court."

You have a copy of the letter dated December 18, 1953, from National Geographic Society, signed by Mr. Hanson as its attorney, in which it consented to the sale of the 184 shares of the stock of the Southern States Portland Cement Company to Marquette Cement Manufacturing Company at $420.53 per share, that being the estimated price at that time. I advised you and Mr. Hanson that I thought that Miss Williams would receive more than $420.53 per share, and that you would be advised as to the exact price later. She received $434.61973 per share for the stock, and the aggregate amount paid to her was $79,970.03.

I think that you should obtain from National Geographic Society a letter addressed to Miss Eugenia F. Williams, Trustee, agreeing to the reinvestment in United States Government Bonds of the balance of said $79,970.03 after deduction therefrom of the Federal Taxes."

On February 2, 1954, the secretary of the Society, in compliance with the suggestion of Miss Williams' counsel, wrote in so far as pertinent the following to the counsel for Miss Williams:

"In compliance with the request made by your attorney, R. M. McConnell, in his letter of January 27 addressed to Mr. James B. Wright, this is to advise you that the National Geographic Society is entirely agreeable to your proposal to reinvest in United States Government Bonds the net proceeds from the sale of the 184 shares of stock of the Southern States Portland Cement Company, after deduction therefrom of Federal taxes. We understand that the receipts from this transaction, before taxes, total $79,970.03.

Our General Counsel, Mr. Elisha Hanson, has asked me, by means of this letter, to call to the attention of Mr. McConnell his opinion that The Society's one-half contingent remainder interest in the proceeds of this sale should be exempted from Federal tax inasmuch as The Society is, under the provisions of the Internal Revenue Code, exempt from all such taxes."

All of the net proceeds from the sale of the cement company stock was placed in the Trustee account by Miss Williams.

We hold that Miss Williams, in so far as the profit from the sale of the cement company stock is concerned, is estopped to now claim those profits as hers individually as income beneficiary. The letters heretofore copied are to us a clear understanding and agreement by the parties that *all* the net proceeds from the sale of the cement company stock were to be treated as *corpus*. It was with this understanding that the Society agreed to the sale.

Whether or not Miss Williams had the right as income beneficiary to receive the "profits" under the terms of the Trust is immaterial to the sale of this stock. She agreed through counsel that it would be considered as *corpus* and she should not now be permitted to alter that position unless a fraud was perpetrated upon her to obtain the agreement. There is no hint in this record that anyone intended any fraud. Agreements once made and acted upon cannot be discarded at the whim of a party. If this were not so, all commercial intercourse would collapse and we would be left with little else than the law of the jungle. The doctrine of equitable estoppel should be applied when the facts demand its application in the interest of justice and right. See and compare Molloy v. City of Chattanooga (1950) as first reported 191 Tenn. 173, 232 S.W.2d 24 and the petition to rehear reported as 191 Tenn. 173, 232 S.W.2d 404.

The Assignments of Error directed to the Chancellor's finding that the "profits" from the sale of the cement company are "income" are sustained.

It therefore results that the Chancellor is affirmed in his holding that the stock dividends in question are income, but is reversed on the matter of the profits from the sale of the cement company stock.

The cause is to be remanded to the Chancery Court of Knox County for such other proceeding not inconsistent with this opinion.

The cost below and the cost of appeal are assessed against the Society.

Decree accordingly.

CARNEY, P. J., and MATHERNE, J., concur.